STATE OF MISSOURI, Respondent, v. CURTIS HARDY, Appellant, No. 41478—225 S. W. (2d) 693.

Division Two, January 9, 1950.

1170

*C. A. Powell* for appellant.

1172

*J. E. Taylor,* Attorney General, and *David Donnelly,* Assistant Àttorney General, for respondent.

LEEDY, J.—This is an appeal from a judgment of the Stoddard Circuit Court convicting appellant (hereinafter referred to as defendant) of "assault with malice aforethought," and sentencing him to five years' imprisonment in the state penitentiary. Defendant waived a jury, and trial was to the court, as authorized by the new matter appearing as the last clause of § 22, Art. I, Const. of Mo., 1945. This appears to be the first appeal to reach this court

in any criminal case tried under this new, constitutionally sanctioned procedure.

Joe Tucker, the prosecuting witness, operated a cafe about a mile south of Bloomfield, in Stoddard County. The defendant, an unmarried man about 25 years of age, lived with his parents on a farm 3-½ miles north of Bloomfield. Some six months prior to the difficulty in question, the prosecuting witness had ejected the defendant from his cafe because of his drunken condition. This is the only time he had seen the defendant. Defendant cursed the prosecuting witness and said, "I will get you for this." About 8:15 P. M., on April 24, 1948, the defendant shot the prosecuting witness in the back as the latter was leaning over a bottle cooler in his cafe with his back to the front door. The weapon used was a .22 rifle, which was fired from a position at or near the front door. It appears that Tucker was not even aware of defendant's presence. The bullet, a .22 long, struck Tucker in the upper part of the back just inside the shoulder blade and traveled up through his back and into his neck where it lodged within an inch of the jugular vein. It had not been removed at the time of trial because not deemed medically advisable. Upon the trial he did not deny the assault and his sole defense was that of insanity. He did not take the stand.

Defendant was apprehended the same night the shooting occurred while walking down the county road in the vicinity of his home. He was armed with the rifle with which he shot Tucker, and drew it on one of the arresting officers, a highway patrolman, who, in turn, fired his revolver at the ground and required the defendant to drop the rifle. In his statement to the patrolman and sheriff made following his arrest, he detailed the preparations he had made to shoot Tucker. He stated that he had it in for Joe Tucker for putting him out of his place, and that he had been over to the cafe three or four times to shoot Tucker, but had not done so because things weren't right. He further stated that on the occasion in question he had bought some wine, and went out in a field near Tucker's cafe and reconnoitered the premises several times, on one of which trips he saw a woman employee of the cafe (in which he was corroborated by the woman), and he hid the gun from her by holding it behind himself; at another time there was a car parked in front of the cafe; finally, when there was no one in view, he went to the front door, opened the screen and aimed at Joe Tucker, who was standing by the bottle cooler, and just as he started to shoot, Tucker bent over. The officers found the wine bottle at the field mentioned by the defendant. It was developed on cross-examination of the officers that the defendant, in the same conversation, stated that spirits had caused him to do the shooting. The officers were of the opinion that he was not drunk, but they were not asked to express an opinion as to his sanity. It appeared that defendant's father had removed the firing pin from

the rifle, and defendant stated to the officers that he had made such a pin on the day of the shooting. Other pertinent facts will be stated in connection with the points to which they relate.

The court made and entered of record the following finding: "The court finds the defendant, Curtis Hardy, guilty of assault with malice aforethought as charged in the information and assess his punishment at imprisonment in the penitentiary for a period of five (5) years." "This verdict necessarily was under Sec. 4408, in view of the finding of malice aforethought." State v. Henderson, 356 Mo. 1072, 1077, 204 S. W. 2d 774, 778.

Omitting formal averments (and with challenged phraseology italicized by us for more ready reference), the information reads as follows: "That on the 24th day of April, 1948, at and in the County of Stoddard, and State of Missouri, the defendant Curtis Hardy, then and there being, did then and there willfully, unlawfully, feloniously, on purpose and of his malice aforethought, in and upon one Joe D. Tucker, then and there being, with a certain dangerous and deadly weapon, to-wit, a rifle loaded with gunpowder and leaden ball, which he, the said Curtis Hardy, in his hands then and there had and held, did make an assault, with the felonious intent then and there, him, the said Joe D. Tucker, on purpose, and of his malice aforethought, feloniously to kill *or to do him,* the said Joe D. Tucker, *some great personal injury or bodily harm* against the peace and dignity of the State."

The information was based on § 4408, R. S. '39 and Mo. R. S. A.,[1] reading as follows: "Every person who shall, on purpose and of malice aforethought, shoot at or stab another, or assault or beat another with a deadly weapon, or by any other means or force likely to produce death or great bodily harm, with intent to kill, maim, ravish or rob such person, or in the attempt to commit any burglary or other felony, or in resisting the execution of legal process, shall be punished by imprisonment in the penitentiary not less than two years."

Defendant in this court, and for the first time, attacks the information as "defective" under § 4408. At the outset it may be said that the use of the form of information here employed is not to be commended. The only information using the challenged phraseology we have been able to discover is that in State v. Dildine, 330 Mo. 756, 51 S. W. 2d 1, where the assault was charged to have been committed with the intent "to kill or do him the said ———— some great personal injury or bodily harm," just as in the case at bar. The information was approved. It was held to charge an offense under what is now § 4408, although the conviction was for an included lesser offense under what is now § 4409. It is true that the attack there con-

---

[1] All references to statutes are to R. S. '39 and corresponding section numbers in Mo. R. S. A.

sidered was not upon the ground here urged. However, it should be noted that that information failed to allege that the assault was committed with malice aforethought. On account of such failure, the information did not charge an offense under what is now § 4408. State ex rel. Dutton v. Sevier, 336 Mo. 1236, 83 S. W. 2d 581. To avoid possible confusion, it should be pointed out that the Dildine case has been overruled in this one particular, and, to that extent, is not to be any longer followed.

 Defendant's first complaint is that the information charges, disjunctively, that the intent was "to kill *or* to do some great personal injury or bodily harm." He invokes the rule that where a statute on which an information is founded enumerates the offenses, or the intent necessary to constitute such offenses, disjunctively, the information must charge such acts and intent conjunctively, where the acts are not repugnant, citing State v. Currier and Moore, 225 Mo. 642, 125 S. W. 461. This complaint comes too late under the rule that infirmities of form in an information are generally cured by verdict, and the express pronouncement of this court that "A pleading in the alternative is a mere defect of form, and there is no reason why it should not be held good after verdict." State v. Bostic, (Mo.) 285 S. W. 432.

 The second ground of attack is that it "is not a violation of § 4408 to make an assault with intent '*to do some great personal injury or bodily harm.*'" These same objections are urged against a given declaration of law, No. 5, which authorized a conviction of felonious assault with malice aforethought under § 4408 if the court found and believed from the evidence (among other things) that defendant's intent in making the assault hypothesized was "to kill or to do him, the said Joe D. Tucker, *some great bodily harm.*"

It is true that § 4408, in specifying the intent, does not use the words we have italicized, but it does employ the word "maim," among others. Where intent is an element of the offense, it should be alleged substantially in the words of the statute. 6 C. J. S., Assault and Battery, § 106. This court, in sustaining the validity of an information under § 4408 which charged the intent of the accused in committing the assault to be "to maim *and commit great bodily harm,*" said this: "The addition of the words 'and commit great bodily harm' following the word 'maim' in the information is also·a subject of complaint. In what respect the appellant is injured by this addition we are not told. The added words are the equivalents of an averment of an intent on the part of the appellant to inflict an injury permanent in its nature or more serious than an ordinary battery. . . . *In short, they mean nothing more than is expressed by the word 'maim'* . . ." State v. Foster, 281 Mo. 618, 624, 220 S. W. 958, 959. (Italics the present writer's.) It follows, therefore, that the allegation of an intent "to do great personal injury or bodily harm" is the equiva-

lent of an allegation of an intent to maim, and so within the terms of the statute.

In State v. Meinhardt, (Mo.) 82 S. W. 2d 890, this court construed the intent provisions of a cognate section (§4409, felonious assault without malice aforethought). The verdict in that case found defendant guilty "of assault with intent to kill or to do great bodily harm." It was urged that the verdict was defective because it found the accused guilty of one or the other of two offenses. It was there said (1. c. 893) : "The gist of the crimes defined in sections 4014 and 4015 [now 4408 and 4409] is assault. The one with malice aforethought, the other without such malice. Assaults, under section 4015 [4409], whether made with intent to kill or made to do great bodily harm stand on the same footing. The punishment prescribed is for the assault. The intent with which the assault is committed is immaterial so long as it is made with intent to do one or more of the acts mentioned in the section." By a parity of reasoning, the same must be said of § 4408.

■ The single case cited in support of the attack on the declaration of law is State v. Littler, (Mo.) 186 S. W. 1045, which we find not in point. There the information charged an assault with intent to kill, under the statute here involved, but the jury was instructed that they should convict if they found that defendant intended to kill the person assaulted *or to do him some great bodily harm*. The italicized words were not in the information, and the instruction was challenged as being broader than the charge, and this was sustained. The situation in the case at bar is not parallel for the reason that the instruction follows the language of the information, the latter charging both an intent to kill and an intent to maim.

■ Error is assigned in the exclusion of certain oral statements alleged to have been made by defendant to his father (and one to Ada Bridges) both prior and subsequent to the assault, as follows: "That he had experienced his spirit leaving his body and returning; that he shot Joe Tucker because the spirits told him ■ to do that, and that he had been hypnotized by Tucker; that he had seen a white light the night of the shooting, and it might have been an angel; that he was not sure he had shot Tucker; that there might have been blanks in his gun; and that if he did it was because the spirits wanted it done; that all the other boys in jail were there on his (defendant's) account; that he wanted a spiritual lawyer to help his lawyer try the case; that politics and religion would have to come through him; that he had been in the movies, and he had seen Ada Bridges in the movies, and she had seen him in the movies." It is charged that such statements would have tended to show that defendant was insane. both at the time of the assault and at the time of the trial.

It was held in State v. Porter, 213 Mo. 43, 60, 111 S. W. 529, 532, that when a defendant's sanity "at the time of the commission of the

act with which he is charged is directly involved, then . . . great latitude is allowed in making the investigation touching the subject, and any statements or any actions or conduct closely connected, as it was shown to be in this case, which have any tendency to throw light upon the mental condition of the defendant, in our opinion, is clearly admissible in evidence.'' But, as pointed out in State v. Jackson, 346 Mo. 474, 480, 142 S. W. 2d 45, 48, this liberal doctrine is not unbounded. We have concluded that if the court erred in the rulings complained of, defendant was not prejudiced because most of the excluded statements were, in substance and effect, shown by other witnesses, and the rest were merely cumulative, and of considerably less value for the purpose intended than many of those admitted, as will be seen from these excerpts taken from defendant's statement: ''Several lay witnesses, on behalf of the appellant, testified to the following facts relative to his insanity:—that for a long time prior to the shooting the appellant talked about impossible and improbable things and things that did not occur, by constantly talking of spirits and hypnotism, by saying that Joe Tucker and two girls had hypnotized him at Tucker's Cafe, by saying that spirits left his body and floated around and returned again, by saying his father had hypnotized him and that his father's eyes protruded from his head, by saying he shot Joe Tucker because Tucker hypnotized him, by saying he had shot Tucker on a prior occasion and was put in jail for it, by saying that women and other people who worked in carnivals had put tubes in his private parts, by saying that a girl had come to their home in a goat cart and that girls had come to their home and stayed for weeks at a time, by saying that he wanted to marry a girl but his father 'got too thick with her,' by saying that he had a child, 48 children, and that the fingers on some of the children were grown together and were cut apart without bleeding, by saying that a five-year old girl had given birth to a baby, by saying that pictures had been made of him and girls in the nude and shown at the motion picture show in Bloomfield, by saying that he had 'bummed' his way to Flint, Michigan, by saying that he had gone away and come back with lots of money, and by saying his picture was in a magazine and newspapers; that the appellant frequently looked into a looking glass and talked to himself; that he did only such chores as specifically directed; and that he seldom associated with other people.''

Defendant next complains that ''all the testimony in the case shows that appellant was insane at the time of the shooting'' and hence the court should have given his requested declaration of law directing a finding of not guilty because of insanity. He further complains that ''the finding of the appellant guilty, and not finding him not guilty on account of insanity at the time of the assault is against the weight of the evidence, and the trial court abused its discretion in not granting a new trial on that ground.'' The statements of defendant

relied on to show his insanity have been set out in connection with the next preceding point. In addition, it was shown that he had been previously committed to State Hospital No. 4 at Farmington as an insane person by an order of the county court made August 20, 1945. How long he was in the institution does not appear, nor does the reason for his discharge. The whole showing touching defendant's mental condition both at the time of the shooting and at the time of the trial was unsatisfactory and inconclusive. For example, the three local physicians called in his behalf expressed the opinion that he was "mentally off," as one of them put it, or, as the other two said, "suffering from dementia praecox." But it was further developed by one or more of these experts that the mental condition of a person suffering from that disease may stay the same, improve, or get worse. The only one of these witnesses who was asked the direct question as to whether the dementia praecox from which defendant was suffering was permanent or temporary in nature replied that he could not say. Two of these experts readily conceded that if the offense were committed in the manner related by defendant in his statement to the officers following his arrest (and it was so shown by the state's evidence), it was their opinion that he was rational at the time the act was committed. The legal test of accountability being defendant's mental ability at the time of the shooting to distinguish between right and wrong with respect to the act committed (State v. Porter, supra), there is nothing in the first proposition urged. Nor do we find any abuse of discretion in the court's finding against defendant on the issue of insanity. None of the lay witnesses who testified as to statements of improbable things made by defendant were asked to express an opinion as to his sanity, so for aught that appears, the court may have been justified in concluding that such statements were made as a sham, and for the purpose of feigning insanity. While the evidence might have justified a finding that defendant was insane at the time of the shooting, yet there was substantial evidence justifying the contrary inference that defendant was rational at the time and could distinguish between right and wrong with respect to the act. It was peculiarly within the province of the court to weigh the evidence.

The fact that in the trial of a jury-waived felony case under the new constitution the judge acts in what amounts to the dual role of court and jury would seem to suggest the desirability of defining the scope and manner of review of fact questions in such cases, and particularly whether the pre-existing practice in that respect (which is founded upon a trial court's approval of a jury's verdict rather than an original determination by the court itself) is to be followed. But the question does not arise in the case at bar, and so it will be left for future determination if, in the meantime, it is not regulated by rule or statute.

■ Other complaints go to the giving and refusal of instructions on the defense of insanity. It is not contended that any error arises in this connection if well-established precedents are adhered to, but we are asked to overrule the cases holding that the burden of sustaining the defense of insanity is upon the defendant. This question was considered at length in the comparatively recent case of State v. Murphy, 338 Mo. 291, 90 S. W. 2d 103, and we are satisfied with the conclusion there reached. It is also suggested that the doctrine that mental incapacity to excuse the commission of a crime must be such that the defendant is unable to distinguish right from wrong at the time of the commission of the offense is not in harmony with the trend of modern thought, and that this test is harsh and cruel, and the law in that regard should be redeclared. We are satisfied with the reasoning of the cases on this question, and are not disposed to re-examine the question. See State v. Porter, supra; State v. Jackson, supra; State v. Pinski, (Mo.) 163 S. W. 2d 785; State v. Sapp, 356 Mo. 705, 203 S. W. 2d 425.

Other errors are assigned, but they are either not properly preserved for review, or are not of sufficient merit to require discussion. The record proper has been examined and found to be without reversible error. The judgment is affirmed. All concur.