STATE of Missouri,
Plaintiff-Respondent,

v.

Melvin HARLSTON,
Defendant-Appellant.

No. 38023.

Missouri Court of Appeals,
St. Louis District,
Division Three.

April 11, 1978.

Motion for Rehearing and/or Transfer
Denied May 9, 1978.

Application to Transfer Denied
June 15, 1978.

774

Louis Gilden, St. Louis, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Preston Dean, Robert M. Sommers, Asst. Attys. Gen., Jefferson City, George A. Peach, Circuit Atty., Henry J. Fredericks, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

KELLY, Judge.

This is an appeal from a conviction in the Circuit Court of the City of St. Louis in a jury tried case wherein the appellant, Melvin Harlston, was found guilty of violating § 121.270 subsection 2 V.A.M.S.—Tampering with a Voting Machine—and was sentenced to be confined in the custody of the Missouri Department of Corrections for a period of five years. We affirm.

The evidence offered by the state during the jury trial supports a finding that Mr. Harlston was a candidate for the office of Constable of the City of St. Louis from the First District on the Democratic ticket at the Primary Election conducted on August 6, 1974. Voting machines were being used in that Primary Election in polling places for Ward 3, Precincts 14 and 6 in the City of St. Louis. The polling place for Ward 3, Precinct 14 was situated at 4105 West Florissant and the polling place for Precinct 6, at 4242 Grove Avenue, the Eliot School.

In the polling place on West Florissant there were two voting machines for use in the Primary Election; one of these was machine number 24026, the voting machine involved in this prosecution.

There was evidence relative to the operation of these voting machines, but it is unnecessary for the purposes of this decision to set it out in detail here. There was, also, evidence from which the jury could find that some short time prior to 9 a. m. on the morning of August 6, 1974, a lady came into the polling place on West Florissant, requested a Republican ballot, and entered the voting booth. She had a change of mind with respect to the party ballot and requested that instead of a Republican ballot she be furnished with a Democratic ballot. In attempting to make the change the voting machine was jammed. According to the evidence nine votes were on the machine at the time this occurred.

After the voting machine jammed one of the election judges, a Mr. Jackson, left the polling place and shortly thereafter Mr. Harlston entered and advised another election judge, Mrs. Taylor, that he knew how to fix the jammed voting machine. Mrs. Taylor arose from the table where she and the other election officials were sitting, and went to the jammed voting machine. Mr. Harlston went to the front of the voting machine and inside the curtains while Mrs. Taylor remained on the side of the voting machine. Mr. Harlston then instructed Mrs. Taylor to "pull the knob." She understood him to mean the "operator's knob," which she then pulled out. The curtain to the voting booth closed and opened, and after the curtain opened again Mr. Harlston asked her a second time to pull the knob out. She did so about 12 or 13 times. During this period no one other than Mr. Harl-

ston and Mrs. Taylor touched this voting machine. Each time she pulled the knob out she could hear the clicking as the curtains to the voting booth opened and closed. The public counter on this voting machine which records the number of votes cast on the machine showed that prior to Mr. Harlston's arrival nine voters had cast their votes on voting machine No. 24026 and when he left the polling place this same public counter showed twenty-two votes had been cast on the same machine.

Nathaniel Lee Shipp, a member of the Board of Election Commissioners, arrived at the West Florissant polling place and observed Mr. Harlston coming out of the voting booth. Mr. Shipp recognized Mr. Harlston as a candidate and told him that he was in violation of "State Statute 118," which prohibits electioneering at a polling place, and suggested that Mr. Harlston leave the polling place. Mr. Harlston departed. Mr. Shipp then ordered voting machine No. 24026 impounded and no one else was allowed to cast their vote on it. According to the record of this voting machine Mr. Harlston received seventeen votes. The state's evidence was that it would be impossible to get 13 Democratic votes on the voting machine if the "Republican" knob was out.

On appeal the appellant, as Mr. Harlston shall be hereinafter identified, raises six Points for review. Points I, II and VI are directed at the sufficiency of the Indictment; Point III, to the propriety of a verdict directing instruction and a verdict form; Point IV, to the admission into evidence proof of a separate and distinct crime, i. e. tampering with a voting machine at a polling place on Grove Avenue; and Point V to excluding from evidence appellant's proffered testimony to prove that the additional votes shown as cast on the voting machine might have come from sources other than those shown by the state's evidence.

For reasons hereinafter stated we find no merit to any of these contentions and we therefore affirm.

The Indictment upon which this prosecution was commenced reads as follows:

" 'INDICTMENT

THE GRAND JURORS OF THE STATE OF MISSOURI, within and for the body of the City of St. Louis, now here in Court, duly impaneled, sworn and charged upon their oath present,

That, MELVIN HARLSTON, on the 6th day of August, one thousand nine hundred and seventy-four, at the City of St. Louis aforesaid, did willfully, unlawfully and feloniously tamper with a voting machine in use at 4105 West Florissant, a duly designated polling place in the City of St. Louis, duly installed therein by the Board of Election Commissioners, of the City of St. Louis, for the purpose of recording votes cast in the Primary Election held on the 6th day of August, 1974, with the felonious intent to change or destroy the record of votes thereon; contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State.

THE GRAND JURORS OF THE STATE OF MISSOURI, within and for the body of the City of St. Louis, now here in Court, duly impaneled, sworn and charged, upon their oath present further as follows:

That MELVIN HARLSTON, on the 6th day of August, 1974, at the City of St. Louis, State of Missouri, did willfully, unlawfully and feloniously tamper with voting machines in use at 4242 Grove Avenue, a duly designated polling place in the City of St. Louis, duly installed therein by the Board of Election Commissioners of the City of St. Louis for the purpose of recording votes cast in the Primary Election held on the 6th day of August, 1974, with the felonious intent to change or destroy the records of votes thereon; contrary to the form of the Statute in such case made and provied (sic), and against the peace and dignity of the State.' "

This Indictment was filed on September 17, 1974, in the office of the Clerk of the Circuit Court for Criminal Causes of the

City of St. Louis. On October 2, 1974, appellant was arraigned and entered a plea of not guilty. Thereafter, on May 6, 1975, appellant filed a Motion for a Bill of Particulars as follows:

## " 'MOTION FOR A BILL OF PARTICULARS

'Comes now Melvin Harlston, the defendant, and states that he has been indicted by the Grand Jury of the City of St. Louis, State of Missouri, for two counts of tampering with a voting machine.

'He states that said indictment is vague and nebulous in that it does not properly apprise him of the facts of the offense for which he must defend himself.

'WHEREFORE, defendant prays that this Court make and enter an order directing the State of Missouri to file a Bill of Particulars which states (1) the manner in which he is alleged to willfully, unlawfully and feloniously tamper with the voting machine specified in Count I of the indictment and (2) the manner in which he is alleged to willfully, unlawfully and feloniously tamper with the voting machine specified in Count II of the indictment.' "

The trial court sustained this Motion, and on May 14, 1975, the state filed a Bill of Particulars reading as follows:

## " 'PLAINTIFF'S BILL OF PARTICULARS

'Comes now the State of Missouri and files a Bill of Particulars in the above-entitled cause setting forth the manner in which the defendant is alleged to have wilfully, unlawfully and feloniously tampered with the voting machines specified in Counts I and II of this indictment, to-wit:

'COUNT I: Defendant moved, operated and worked the buttons on the said voting machine, causing the said voting machine to register an additional unauthorized thirteen (13) votes, and

'COUNT II: Defendant moved, operated and worked the buttons on the said voting machines causing the said voting machines to register an additional unauthorized forty-two (42) votes.' "

■ Appellant, in the trial court, did not raise those grounds for error covered in Points Relied On I, II and VI, and did not obtain a ruling thereon prior to presenting them in his brief in this court. A reviewing court is, nevertheless, required by Rule 28.-02 V.A.M.R. to consider allegations of error respecting the sufficiency of the information or indictment, verdict, judgment and sentence although they were not raised in the trial court or preserved for review.

Reduced to its simplest terms, appellant's contention raised by Point I is that the indictment on which he was brought to trial is fatally defective in that it improperly alleges two crimes in but a single Count.

■ While we would not recommend this form of indictment and are convinced that the better practice is to separately identify each Count of an indictment or information by insertion of the identifying number of the Count, i. e. Count I, Count II, etc., in the pleading so there can be no question where one Count ends and another commences, we find no requirement that this be done in Rule 24.01 V.A.M.R. nor in Rule 24.04 V.A.M.R., the Rules of Criminal Procedure specifying what the indictment or information shall contain and what offenses may be charged in the same indictment or information in separate counts.

Neither party to this appeal has cited any authority on this Point, and so far as we are aware it is a question of first impression in this state. Our own research has led us to *Harger v. State,* 54 Ala.App. 242, 307 So.2d 51 (1974) which dealt with an indictment similarly framed. The Alabama Court held that an indictment in that form was "an ordinary two count indictment." In reaching its decision that court relied on another Alabama Appeal's case, *Wilson v. State,* 31 Ala.App. 232, 14 So.2d 382 (1943), which said:

"True, the said counts were not numbered one and two. But that, we apprehend, was unnecessary. The word 'Count' connotes, as we understand it, no more than the word 'Paragraph.' Words

and Phrases, Permanent Edition, Vol. 10, pages 10 and 11. There were two distinct paragraphs, and the demurrers to the indictment were properly overruled."

Appellant was not misled by the form in which this Indictment was filed. His counsel, in his Motion for Bill of Particulars, recited that appellant had been "indicted . . . for *two counts of tampering with a voting machine.*"

■ Furthermore, when the trial began on February 17, 1976, and before the jury was sworn for voir dire examination, the Assistant Circuit Attorney informed the trial court that the state had elected "to proceed on Count I herein and dismiss Count II by means of nolle prosequi . . .," and suggested that there be no reference to the word "count" during the voir dire "since there is only one cause now pending, and that is the charge of tampering with a voting machine." Assuming, arguendo, that this indictment did, in fact, charge two separate crimes in one count, appellant's remedy was to require the state to elect on which count it would go to the jury, *State v. Walker*, 484 S.W.2d 284, 286[3] (Mo.1972); the state made its election of its own volition prior to the voir dire examination of the jury.

We rule this Point against the appellant.

■ Appellant's second Point is that the indictment was duplicitous because it joined in a single count two separate and distinct crimes. As we have previously held in disposing of his initial Point, we are of the opinion that even though this indictment was somewhat inartfully framed, it did, in fact, plead two offenses in two separate Counts and was not, therefore, duplicitous. We also deduce from the evidence adduced at trial with respect to the incident at the polling place on Grove Avenue the two offenses alleged were properly joined in separate counts under Rule 24.04 as parts of a common scheme or plan, i. e. to tamper with both voting machines.

We also find no merit to this Point and rule it against appellant.

The final attack levelled against this indictment—appellant's Point VI—is that the indictment is fatally defective because it alleges in the disjunctive that at the time he tampered with the voting machine while in use at the Primary Election of August 6, 1974, he did so with the felonious intent "to change *or* destroy the record of votes."

This line of attack has its foundation in a line of cases holding that where a statute disjunctively described several acts which may result in the commission of but a single offense, the indictment or information, if more than one act is alleged, must charge the several acts in the conjunctive if they are not repugnant. This has been the law in Missouri for more than a century. *State v. Fitzsimmons*, 30 Mo. 236, 241 [3] (1860); *State v. Flint*, 62 Mo. 393, 399[2] (1876).

As we understand appellant's position, he contends that this disjunctive pleading is a "fatal defect" in the sense that it failed to charge him with any criminal offense and therefore the trial court did not and could not acquire jurisdiction. *State v. Hasler*, 449 S.W.2d 881, 884[3] (Mo.App.1969). We disagree.

■ An indictment is sufficient if it contains a plain, concise and definite written statement of the essential facts constituting the offense charged. Rule 24.01 V.A.M.R. It is the general rule in this state that an indictment framed in the words of the statute, where the statute sets forth all of the constituent elements of the offense, is sufficient. *State v. Kesterson*, 403 S.W.2d 606, 609[1] (Mo.1966).

■ Appellant here was charged in the indictment in the words of the statute: i. e. "willfully, . . . tamper with a voting machine in use . . . in the Primary Election held on the 6th day of August, 1974 . . ." "Tamper" is a *word of common usage* and of general understanding. The definition of the word itself connotes secrecy and scheming or plotting. *State v. Ridinger*, 364 Mo. 684, 266 S.W.2d 626, 630 (1954). It is defined in Webster's

New International Dictionary (Merriam), 2nd Edition as: "3. To meddle so as to alter a thing; esp. to make corrupting or perverting changes, as to tamper with a document or a text; to interfere with improperly." The term "tamper," when used in a criminal statute "has the limited meaning of improper interference 'as for the purpose of alteration, and to make objectionable or unauthorized changes.' " *Keefe v. Donnell*, 92 Me. 151, 42 A. 345, 348 (1898).

■ The appellant is entitled to be informed of the nature and the cause of the accusation against him so that he may defend the charge. Art. I, Sec. 18(a), Constitution of Missouri, 1945. The indictment must set forth sufficient facts so that either an acquittal or a conviction under it will serve to bar a subsequent prosecution for the same acts. It should be sufficiently specific so there will be no difficulty in determining what evidence would be admissible under its allegations and so the court and the jury may know what they are to try and for what they are to acquit or convict the person charged. It must also be sufficiently specific so a court can determine from the facts alleged whether a crime has been charged as a matter of law. *State v. Hasler*, supra, l. c. 884, 885[7].

We are of the opinion that the indictment in this case meets these standards and is therefore sufficient.

■ The decisive issue in this case is whether the pleading of the intent with which the appellant is alleged to have committed the offense in the disjunctive requires a reversal.

Conceding that this indictment is defective in that it charges disjunctively the intent with which the crime was perpetrated, it is at most an infirmity of form which is cured by verdict responsive to the charge when not properly attacked in the trial court. *State v. Hartman*, 364 Mo. 1109, 273 S.W.2d 198, 204[8] (banc 1954); *State v. Hardy*, 359 Mo. 1169, 225 S.W.2d 693, 696[2] (1950); *State v. Bostic*, 285 S.W. 432, 433[4] (Mo.1926).

We also take note of the fact that Instruction No. 4—the state's verdict director—required that the jury find, before it could convict, that appellant tampered with the voting machine "with intent to change the record of votes thereon" and that the verdict found him "guilty of Tampering with a Voting Machine as submitted in Instruction No. 4." This verdict form is in compliance with MAI–CR.

We find no merit to this Point and rule it against appellant.

Appellant next contends that the trial court erred in submitting an instruction and a verdict form only as to the events on West Florissant because by so doing, the guilty verdict with respect to the crime on West Florissant does not bar a trial for the crime alleged to have taken place on Grove Avenue.

To ascertain appellant's position on this Point we found it necessary to refer to the argument portion of his brief. By doing so, we discern that it is his contention that the jury should have been instructed and furnished verdict forms on both charges so it could make separate findings on each charge and assess appropriate penalties thereon.

■ This point was not raised at trial nor in appellant's motion for new trial. At trial appellant made a general objection to the instruction, reserving his right to make more specific objections "at a later time if necessary." He objected generally to the verdict forms. Rule 20.03 V.A.M.R. In his motion for new trial he attacked the verdict director instruction—Instruction No. 4—on the grounds it was vague and indefinite and improperly submitted the charge to the jury. The point appellant seeks to raise on appeal for the first time has not been preserved for review. Rule 27.20(a) V.A.M.R.

■ Furthermore, the Count based on the incident alleged to have occurred on Grove Avenue was nolle prossed by the state prior to the voir dire examination of

prospective jurors. It was within the sole discretion of the prosecuting attorney to voluntarily enter a nolle prosequi at that time. *State v. Nangle*, 365 Mo. 134, 276 S.W.2d 135, 138[3] (banc 1955).

We rule this Point against the appellant.

Point IV relied on by the appellant is that the trial court erred in admitting into evidence proof of the commission of a separate and distinct crime, i. e. tampering with the voting machine at the polling place on Grove Avenue.

■ The general rule in Missouri is that proof of the commission of separate and distinct crimes is inadmissible unless such proof has some legitimate tendency to directly establish the defendant's guilt of the charge for which he is on trial. Evidence of other crimes is, however, competent to prove the specific crime charged when it tends to establish motive, intent, absence of mistake or accident, common scheme or plan, or the identity of the person charged with commission of the crime for which he or she is on trial. *State v. Mitchell*, 491 S.W.2d 292, 295[1] (Mo.banc 1973).

The evidence drawing this attack was furnished through the testimony of two state witnesses, Officer Lawrence King, a member of the Metropolitan St. Louis Police Department assigned to the Grove Avenue polling place "to keep the peace in the polling place," and William F. B. Carroll, who was Republican Election Judge assigned by the St. Louis Board of Election Commissioners to the polling place for that Primary Election.

The testimony of these two witnesses was to the effect that Mr. Harlston entered the polling place on Grove Avenue at approximately 11:00 a. m. on August 6, 1974. He walked up to Officer King and identified himself as a candidate for Constable. When this was accomplished, Mr. Harlston entered each of two voting machine booths, and in each was heard to instruct an election clerk to "pull the knob." When the knob was pulled the curtains on the voting machines were seen to open and close a number of times.

Earlier in the case the state had offered evidence that this action of the voting booth curtains was the result of a voter casting his or her ballot.

During the direct examination of Officer King the following occurred:

"Q. While you were inside the polling place (on Grove Avenue) that day, did you see the defendant Melvin Harlston?

"Mr. Bell: I'm going to make an objection to this, Your Honor. It's completely irrelevant and immaterial and it doesn't prove or disprove any fact in this case. It would be evidence of another event not connected with this particular event.

"The Court: Be overruled and your objection may go to the whole questioning if you so desire.

"Mr. Bell: I would so desire, Your Honor."

Officer King then related his observations of Mr. Harlston's activities in the polling place.

Mr. Carroll was called to the stand after the conclusion of Officer King's testimony, and Mr. Carroll's testimony relative to what he saw Mr. Harlston do came in without any objection.

■ The state contends that this evidence with respect to Mr. Harlston's activities at the polling place at 4242 Grove Avenue tended to prove that the appellant was guilty of tampering with the voting machine at 4105 West Florissant because it established a common scheme or plan to alter the outcome of the Primary Election. *State v. Mitchell*, supra. We agree.

Appellant, admittedly a candidate for Constable of the City of St. Louis from the First District in the Primary Election of August 6, 1974, had his name on the ballots in the voting machines at the polling places at 4105 West Florissant Avenue and 4242

Grove, Ward 3, Precinct 6, and Ward 3, Precinct 14, respectively. Each vote cast for his candidacy on either of these voting machines enhanced his chances of winning this Primary Election, thereby becoming the Democratic Candidate for that office in the General Election the following November.

The uncontradicted evidence relative to the operation of these voting machines was that a voter at a Primary Election designates the party whose ballot he wishes to vote to one of the election workers before entering the voting booth. An election worker then pulls out the knob controlling the party designation as well as an official knob. After the voter enters the voting booth the voter moves the red knob inside the booth to the right and the curtain on the voting booth closes. The voter then casts his or her vote and, after voting, moves the red knob to the left, the curtain on the voting booth opens, and the voter can then exit therefrom. Should the next voter desire to vote a ballot for a party other than that for which the prior voter designated, the election worker must then pull out the knob for the party designated, the knob for the party ballot previously voted is then pushed in, and the official knob is pulled out. In those cases where the next voter designates the same party ballot as the prior voter, the knob designating the ballot of the political party is not touched, but the official knob must be reactivated, as it must each time a voter leaves the voting booth.

Where, as here, there is a jamming, a "50 key" is used and it records on the public counter that the curtains on the voting booth were closed and opened, but it does not record a vote for any of the candidates. Otherwise, a vote is recorded each time the curtain on the voting booth is opened.

According to the state's evidence, prior to appellant's entry into the voting booth at 4105 West Florissant, nine votes had been cast on that voting machine. After he entered the voting booth Mrs. Taylor, one of the election judges, was directed by the appellant to pull the operator's knob out and she did as she was directed. The curtain to the voting booth closed and then opened. This procedure was employed twelve or thirteen times while the appellant remained in the voting booth, and each time the curtain to the voting booth closed and opened. After appellant left the voting booth no one else voted on this machine, and the public counter on the voting machine showed that twenty-two votes had been cast on it. The voting machine was impounded and it was subsequently ascertained that, according to the records of this machine, seventeen votes were cast for appellant on this machine.

Approximately two hours later appellant entered the polling place for Ward 3, Precinct 6 at 4242 Grove Avenue. Here too he entered a voting booth, shut the curtains and a man named Pickett was observed to pull the knob on the voting machine and the curtain was seen to close and open several times. Appellant exited from this first voting booth and then entered a second where the curtains were again heard to open and close.

We are of the opinion that evidence of these events at the polling place on Grove Avenue was admissible to show a common scheme or plan, i. e. to alter the outcome of the Primary Election of August 6, 1974, by tampering with voting machines being employed there. Appellant had an interest in the outcome of the Election; he had no lawful business to enter these voting booths and cast votes indicated by the closing and opening of the curtains on the voting booths. The action in each instance was the same, i. e. unauthorized voting, thereby altering the records of the election. In the first instance, it is not just a coincidence that the record of the election demonstrated that he received seventeen votes when twelve or thirteen votes were cast by him while in the voting booth on West Florissant Avenue, whereas only nine votes had been cast on that particular voting machine

prior to his appearance on the scene and entry into the voting booth for that particular voting machine. His unauthorized entry into the voting machines at the Grove Avenue polling place and the casting of votes there is some evidence for the jury to consider as part of a common scheme or plan to alter the outcome of the election in his favor. In so doing he was tampering with the voting machines. *State v. Smith*, 431 S.W.2d 74, 79[11] (Mo.1968); *State v. Burnett*, 429 S.W.2d 239, 244[5, 6] (Mo. 1968); *State v. Scown*, 312 S.W.2d 782, 788[6] (Mo.1958); *State v. Tash*, 528 S.W.2d 775, 780[7, 8] (Mo.App.1975); *State v. Cox*, 508 S.W.2d 716, 722[6, 7, 8, 9] (Mo.App. 1974).

We rule this Point against appellant.

The final Point remaining for resolution is appellant's Point V wherein he says that the trial court erred and abused its discretion in excluding defense testimony that the additional votes found on the voting machine could have come from votes already on the voting machine when it was delivered to the polling place on West Florissant, that voting machines had malfunctions, and "numerous other problems."

At trial defense counsel attempted to introduce the testimony of some Committee people that they had knowledge that some voting machines arrived at polling places with votes on them, that they had malfunctions, and that they had other problems. The purpose of this evidence, according to appellant, was to counter the evidence of the state that the appellant voted 13 times on the voting machine at the West Florissant polling place.

When appellant sought to introduce testimony of one witness to this effect the state objected on the grounds that such testimony was irrelevant and immaterial "for the reason that it (had) nothing to do with the machines in these particular cases."

Subsequently appellant made a further effort to introduce this evidence through another witness and the state renewed its objection on the grounds that it was irrelevant unless it concerned the particular machine in evidence. The trial court sustained this objection; whereupon the appellant made the following offer of proof:

"My offer of proof would tend to show that if the witness were allowed to answer the question, she would answer that in the thirty years she had been in politics, *she's known numerous of these machines to have malfunctions.* Some would have votes on them at the time they were voted, and other than that wouldn't properly work, and numerous other problems." (emphasis added)

The state objected to this offer of proof as follows:

"Well, I say no foundation, there is no foundation that she knows that *this* particular machine was malfunctioning or *this* particular machine had votes and that she has any testimony that she is permitted to touch the machines themselves. That has not been laid." (emphasis added)

 A trial judge enjoys a wide discretion in ruling on whether to admit or exclude evidence adduced by the parties at trial, *State v. Taylor*, 506 S.W.2d 94, 95[1] (Mo.App.1974), and it is within the trial judge's discretion to determine the materiality and relevancy of evidence proffered. *State v. Martin*, 530 S.W.2d 447, 452[18] (Mo.App.1975). The relevancy of evidence depends upon whether the evidence proffered tends to prove or disprove a fact in issue or to corroborate evidence which is relevant and which bears on the principal issue. Where evidence offered is immaterial and irrelevant it is not error to refuse its introduction. Irrelevant or immaterial evidence is excluded because its admission has a tendency to draw the jury's attention away from the issues it must decide. *State v. Walden*, 490 S.W.2d 391, 393[1. 2. 3] (Mo. App.1973). Absent clear abuse, an appellate court will not interfere with the trial court's ruling on the admission or exclusion of evidence. *Aiple v. South Side National*

*Bank in St. Louis*, 442 S.W.2d 145, 152[7] (Mo.App.1969).

To preserve the exclusion of proffered evidence for review it is essential that a proper question must be asked, and, on objection thereto, an offer must be made at the time showing what evidence will be given if the witness is permitted to answer, the purpose and object of the testimony sought to be introduced, and all facts necessary to establish the admissibility of the evidence. *Byam v. Kansas City Public Service Co.*, 328 Mo. 813, 41 S.W.2d 945, 952[15] (1931). The offer of proof must contain all of the facts necessary to establish the admissibility sought to be introduced in sufficient detail to demonstrate its relevancy and materiality. *Kinzel v. West Park Investment Corporation*, 330 S.W.2d 792, 795[1] (Mo.1959). The purpose of requirements for observance of these formalities and rules with respect to offers of proof is to make certain that the trial court and opposing counsel understand what evidence is being offered, and it is for this reason that the evidence should be stated in enough detail to demonstrate its relevancy and materiality. *Stipp v. Tsutomi Karasawa*, 318 S.W.2d 172, 175[5] (Mo.1958). This offer of proof suffers the same infirmities as those noted in *Kinzel v. West Park Investment Corporation*, supra, and cases cited therein. The fact that in some instances some voting machines were delivered to polling places with votes on them, that some other voting machines suffered malfunctions of an unspecified nature, or had "numerous other problems," would not tend to prove that the thirteen votes on voting machine No. 24026 were the result of any of these.

We have concluded that there was no clear abuse of discretion by the trial court in excluding the proffered evidence because of the general nature of both the questions propounded to the witnesses and the offer of proof made in support thereof.

We rule this Point against appellant.

The judgment is affirmed.

GUNN, P. J., and JAMES R. REINHARD, Special Judge, concur.