**STATE of Missouri, Plaintiff-Respondent,**

v.

**Leon NEVELS, Defendant-Appellant.**

**No. KCD29569.**

Missouri Court of Appeals, Kansas City District.

Aug. 28, 1978.

Motion for Rehearing and/or Transfer Denied Oct. 10, 1978.

Application to Transfer Denied Nov. 6, 1978.

 

Clifford A. Cohen, Public Defender, Kevin R. Locke, Asst. Public Defender, Galen Mussman, Certified Law Intern, Kansas City, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Jeff W. Schaeperkoetter, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Before SOMERVILLE, P. J., and DIXON and TURNAGE, JJ.

DIXON, Judge.

Defendant appeals from a conviction for second degree murder and for assault with malice. The offenses were charged as separate counts in a single indictment. Both were tried to a single jury which agreed on guilt as to Count II involving the assault but were unable to agree on punishment. That jury could not agree on guilt as to Count I. Count I was retried almost immediately to another jury which found defendant guilty and assessed punishment at thirty years. The trial court assessed punishment at twenty years on Count II to be served consecutively to the sentence on Count I. Timely motions for new trial were ruled adversely to defendant, and timely notice of appeal was filed as to both convictions.

Thus, under this unusual procedural setting, the evidence from two separate trials is involved in the appeal. The parties agree that the evidence was very similar in both trials and, since sufficiency is not in issue, the following synopsis will suffice to present the factual background.

Count I for second degree murder was directed to the beating death of Rodney Epperson, the 5-year-old stepson of defendant, and Count II was directed to beating injuries received by an 8-year-old stepdaughter of defendant. The children had lived with the maternal grandmother until a few weeks before the events complained of.

The charges arose when the defendant appeared at a hospital carrying the 5-year-old. Upon examination, the child was bruised and cut and apparently dead. At-

tempts at resuscitation were futile. Postmortem exam revealed the child died of beatings to the body and a severe head injury. Some of the injuries were inflicted by a linear instrument such as a belt or strap. Defendant made admissions to attending doctors that he had been whipping the child. Pursuant to a consent, a police officer obtained a red vinyl strap, apparently a seat belt. Another officer, sent to the home based on information that another child was involved, brought to the hospital the stepdaughter who was also badly bruised. Defendant's wife testified to the defendant's beating of the boy. She also related that defendant put the boy's head under water, following which defendant threw the child to the floor, causing the child's head to strike the floor "real hard." She denied defendant had beaten the children on other occasions, but other evidence presented indicated the beatings of both children had been continuing for some weeks.

Defendant makes contentions of error with respect to both trials. One point of error is directed to both trials, and it will be considered first. Those relating to the first trial will be considered next and then those contentions with respect to the second trial. Without further reference, the evidence considered in connection with the points raised will be that of the relevant trial or trials.

The claim of error common to both trials is defendant's claim that the trial court erred in overruling defendant's motion to quash the jury panels on the basis that the Jackson County procedures for selection denied defendant a jury composed of a representative cross section because of the automatic exemption of women jurors.

■ The proof on this issue is based on a stipulation. The stipulation presents figures on the jurors drawn for jury service from the jury wheel prepared for use during 1976. The statute, § 497.140 RSMo 1969, requires that the jury wheel be replaced annually on or before October 1. The trials were both held in early spring, 1977, and, thus, involved jurors from a jury wheel which the stipulation does not cover. There is no evidence that the makeup of the jury wheel from which these juries were drawn was of the same composition statistically as the 1976 jury wheel. Thus, the defendant has failed to provide a proper factual predicate for his challenge to the jury. In any event, even if the jury is assumed to be in the proportions the stipulations offered would indicate, the issue is controlled by *State v. Duren,* 556 S.W.2d 11 (Mo. banc 1977). The figures here are almost identical to the figures in *Duren,* and it is controlling.

■ The defendant raises three points of error with respect to the first trial where the conviction on Count II for the beating of his stepdaughter resulted. First, defendant claims error because the State was permitted to endorse the name of his wife as a witness on the day of trial. Defendant concedes that late endorsement will not result in a reversal unless there is a showing of prejudice. *State v. Strawther,* 476 S.W.2d 576 (Mo.1972).

■ To attempt to show such prejudice, the defendant asserts that he was unable to properly prepare to meet the testimony of this witness. This claim of prejudice is both factually and legally flawed. Factually, defendant was, of course, aware that his wife was a witness to the beating. Four months before trial, the defendant had been furnished with his wife's police statement. The defendant was permitted to interview his wife on two occasions prior to her testimony, and a written statement was obtained by the defendant the morning before her testimony occurred. Except for a general claim that had she been endorsed earlier, the defendant might have deposed her, the defendant makes no assertion of prejudice on these facts, nor does he specify any specific inquiry that was prevented by the late endorsement. In any event, the defendant never requested any relief by way of continuance or additional time by reason of the endorsement and, absent substantial prejudice, reversible error does not arise without an affidavit of surprise or application for continuance. *State v. Thost,* 328 S.W.2d 36 (Mo.1959).

■ Defendant also claims that the trial court erred in instructing the jury with respect to the word "maim" as used in the verdict director on Count II, because the defendant asserts the word is one of common usage and understanding and the giving of any further definition was unnecessary. The jury requested the definition by a communication to the court after several hours of deliberation. The written communication is illuminating. It was as follows:

"Your Honor: In Instruction No. 9 we are needing the definition of 'maim'.

Would it be permissible to have Your Honor supply this information or could we have a dictionary to arrive at a mutual understanding of the word?"

The court, after extensive discussion and relying upon *State v. Gillespie,* 336 S.W.2d 677 (Mo.1960), and *State v. Hardy,* 359 Mo. 1169, 225 S.W.2d 693 (Mo.1950), defined the word, "maim," as being "the equivalent to great bodily harm or personal injury." The defendant cites *State v. Abram,* 537 S.W.2d 408 (Mo. banc 1976) as support for his claim of error. In that case, the trial court, pursuant to a jury request, defined the word, "intended," and that instruction was held to be error. The rationale of *Abram* was that the words, "intends," or "intentionally," are ordinary terms and admit of no confusion with respect to their meaning and that the use of definitional instructions with respect to such terms would result in confusion rather than clarity because of the various definitional instructions that might be offered. Defendant's argument concludes that the word, "maim," is a very ordinary term in the same vein as the word, "intended." The inquiry of the jury clearly demonstrates that the jury had no such common understanding with respect to the word and were in doubt as to its meaning. If the court had acceded to their request for a dictionary, the definition might well have depended upon which particular dictionary was available to the court. The Oxford English Dictionary (Vol. VI, 1933), defines maim as follows:

"An injury to the body which causes the loss of a limb, or of the use of it; a mutilation, or mutilating wound. In ear-

ly use more widely, any lasting wound or bodily injury . . .. In generalized sense: Loss or permanent disablement of a limb. In early use, any serious bodily injury . . . Mutilation or loss of some essential part; a grave defect, blemish or disablement; an injury or hurt of any kind . . . To mutilate, cripple, render powerless or essentially incomplete; to deprive of."

Even with this definition, the jury might have been confused as to what was required under the verdict director with respect to the word, "maim." The trial court properly relied upon the case law definitions contained in the cases cited above which clearly give to the word, "maim," in a charge of assault with intent to maim as being great bodily harm. Clearly, the situation in this case with the word "maim" being questioned by the jury, the trial court properly provided them with an accurate definition to permit them to understand the verdict directing instruction. However, in *Abram,* though the use of the instruction was found to be error, the defendant was not prejudiced by the definition, and it, therefore, did not result in a reversal. Likewise, in the instant case, the defendant does not make any attempt to demonstrate prejudice by reason of an inaccurate definition, nor for that matter, by the giving of the instruction itself. The point is without merit.

■ The final issue with respect to the first trial is an issue concerning some photographs. During the direct examination of one of the examining doctors, several photographs of the victim were identified. The defendant objected to the admission of the photographs, but they were formally admitted into evidence over the defendant's objection; however, they were not shown to the jury. After the photographs had been marked, the doctor testified without objection as to what the photographs showed. Although the testimony was related to the photograph by the form of the question, the doctor, in fact, was the examining doctor on the night the child was brought to the hospital, and the matters depicted in the photograph were matters within his person-

al knowledge. The critical fact depicted by the photograph in question was the existence on the wrist of the child of an initial which was apparently carved into her flesh. After the testimony concerning that detail which was not objected to, the State asked permission to pass the photos to the jury. At that time, the defendant again objected on the ground that the matters contained in the photograph had already been explained and the photograph was prejudicial because of its nature. No motion to strike the doctor's testimony was ever made. Upon the second objection to the photograph, the trial court refused to permit the jury to view the photograph. Thus, a claim of error based on the admission into evidence of the photograph lacks any substantive effect, for the photograph itself was never viewed by the jury. The testimony of the doctor was not questioned except inferentially, nor could it be since no objection was made. Defendant argues that the testimony of the doctor would never have been given had the photograph not been admitted into evidence. That is a highly speculative argument since, as noted, the doctor was the examining physician and could have testified without any claim of error as to what he observed with respect to the condition of the child. The defendant obtained all the relief which he requested with respect to the photograph and cannot now complain. *State v. Woolford,* 545 S.W.2d 367 (Mo.App.1976); *State v. Cheek,* 413 S.W.2d 231 (Mo.1967).

The defendant raises a single point of error with respect to his second trial which resulted in his conviction for the second degree murder of his stepson. In substance, the defendant's claim is that the trial court erred in permitting evidence at the second trial of the assaults made upon the stepdaughter. Defendant argues that the error results from the general rule that proof of separate crimes is not admissible. *State v. Lee,* 486 S.W.2d 412 (Mo.1972), and *State v. Thomas,* 526 S.W.2d 893 (Mo.App. 1975), present the exceptions with respect to the rule, two of which are relevant with respect to the particular facts of this case. The first of these is the exception to the general rule regarding evidence of other criminal acts when the evidence indicates a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other. Defendant argues that on the authority of *State v. Atkinson,* 293 S.W.2d 941 (Mo.1956), the admission of evidence in this case was error under that exception. In *Atkinson,* the court held it was error to admit evidence of criminal acts committed upon other victims. In the late case of *State v. Griffin,* 497 S.W.2d 133 (Mo.1973), *Atkinson* was distinguished, and evidence was admitted as to attacks upon other individuals, the reasoning being that the crimes were perpetrated concurrently. The evidence in this case supports a strong inference that the attacks upon these children were committed concurrently and were of a common design to abuse the children.

The second exception to the general rule is the exception which has permitted evidence of this nature when it tends to negate accident as a defense. Accident was clearly an issue in the case at the second trial. The defendant's testimony was that the injuries inflicted upon his stepson were an accident. In fact, the trial court based its ruling as to the admissibility of this evidence upon the premise that it was being offered to prove the absence of accident. Defendant argues that the defense of accident was offered only as to the *death* and not the *beating* of his stepson. Defendant thus claims that he admitted intentionally striking his stepson, but claimed the death was an accidental result of the blows. This is a misstatement of the law of accident in a homicide case; for, if the defendant intended the beating, the natural and probable consequences of that beating are intentional acts. Committee Comments on MAI–CR, Excusable Homicide, page 2, in relevant part, states:

> ". . ., [T]he act which caused the death must have been an unintended, unexpected event. If the defendant intended the act, the consequences are no "accident" so far as he is concerned. The

natural and probable consequences of his acts are imputed to the defendant whether he actually intended or foresaw those consequences or not." (Citations omitted).

The defendant in the first trial had requested an instruction on excusable homicide based on accident. The defendant testified in the second trial that the death was "an accident," and the same instruction was given. The evidence of the contemporaneous injuries to the stepdaughter was properly admitted with respect to the issue of "accident" because it tended to counter the defendant's claim by his testimony of an "accident." Such prior beatings of the same individual had been expressly determined to be within the exception noted, *State v. Hudson*, 521 S.W.2d 43 (Mo.App. 1975), on the theory that they tended to show that the acts which resulted in the death of the child were done with the intent to kill him or cause him serious bodily injury.

The fact that the acts shown which tended to negate accident were directed against another individual does not deprive them of probative value because they were nearly contemporaneous. By analogy, the holding of *Griffin* is applicable. No rational basis exists for a distinction between acts which negate "accident" and those which demonstrate intent. Based upon the applicability of the two exceptions noted, the evidence of the assaults on the stepdaughter was properly admitted.

The judgment and conviction are affirmed.

All concur.