## THE STATE v. GEO. A. CURRIER and JOHN MOORE, Appellants.

### Division Two, February 12, 1910.

1. **INFORMATION: Disjunctive Words: Proof.** Where the statute makes the commission of certain acts, named therein in the disjunctive, a crime, all of the several acts may be charged conjunctively in one count, and the count will be sustained by proof of any one of the offenses charged.

2. ————: ————: **Both Felony and Misdemeanor: Wounding and Killing Cattle.** An information charging that defendant did "shoot, wound and kill" seven cattle . . . . "of which wounds three of said cattle then and there died," is not bad under a statute (Sec. 1897, R. S. 1899) which declares that "every person who shall wilfully and maliciously kill, maim, or wound" any cattle, shall be punished by imprisonment in the penitentiary or jail, or by fine. It does not charge two distinct offenses, one, the wounding of four cattle, a misdemeanor, and another, the killing of three, a felony. It does not contain in one count a misjoinder of offenses. Besides, the charge as to wounding may be treated or rejected as surplusage.

3. **WITNESS: Not Indorsed on Indictment.** Unless the record shows opportune objection to the testimony of a witness whose name was not indorsed on the indictment, a complaint that the prosecuting attorney refrained from making said indorsements for the purpose of springing him at the trial as a surprise on the defendant, cannot be considered on appeal; the objection cannot be made for the first time in the motion for a new trial.

4. **REOPENING CASE.** It is not error to refuse to reopen the case for the introduction of negative, unimportant and incompetent testimony.

5. **MOTION FOR NEW TRIAL:** After Judgment.  In criminal cases the motion for a new trial must be filed before judgment, and unless it is so filed there is, in legal contemplation, no motion for a new trial.

Appeal from Howell Circuit Court.—*Hon. W. N. Evans,* Judge.

AFFIRMED.

R. S. *Hogan* and *Green & Green* for appellants.

The indictment charges in the one count the wounding of four cattle and the killing of three: two separate and distinct offenses, the wounding a misdemeanor, the killing a felony.  These two offenses could. not be joined in the same indictment, even if separately stated in different counts, but in no event could they be joined in the one count.  State v. Nitch, 79 Mo. App. 99; State v. Green, 24 Mo. App. 227; State v. Harrison, 62 Mo. App. 112.  The evidence admitted under the charges in the indictment as to the wounding of cattle, was prejudicial to the defendants, was lodged in the minds of the jury, and this instruction would not cure the error of admitting same, or undo the wrong.  State v. Minor, 193 Mo. 597; State v. Hopper, 71 Mo. 425; State v. Fredericks, 85 Mo. 145; State v. Thomas, 99 Mo. 235; State v. Bateman, 198 Mo. 222. The State, with a view of taking an undue advantage of defendants, purposely and intentionally refrained from endorsing the name of Ed Stites on the indictment, and withheld such name from the defendants for the purpose of springing him at the trial as a surprise on defendants; the testimony of said witness was not true and was a surprise to the defendants and by reason of the conduct as aforesaid of respondent, defendants were precluded and did not have the opportunity of showing the falsity of such testimony.  Defendants knew nothing of this witness until the morning of the day of the trial, and did not know what he would tes-

tify to, or, in fact, whether he would be used as a witness, until he was placed on the witness stand; by reason of the situation, appellants, before the witness testified, had no knowledge upon which they could have based a motion to quash the indictment on the ground of surprise. State v. Barrington, 198 Mo. 70; State v. Henderson, 186 Mo. 473.

*Elliott W. Major*, Attorney-General, and *John M. Dawson*, Assistant Attorney-General, for the State.

(1) The indictment is based on Sec. 1987, R. S. 1899, and is sufficient, valid and properly charges the offense. State v. Grimes, 101 Mo. 188; State v. Woodward, 95 Mo. 129; State v. Goss, 74 Mo. 592. The motion to quash was properly overruled. It is a general rule of criminal pleading that the prosecutor is at liberty to charge in a single count, as a single offense, a single act or transaction in violation of law, although that act involves several similar violations of law with respect to several different persons. United States v. Scott, 74 Fed. 215; 1 Hale P. C. 531; 2 Hale P. C. 252; 2 Russ. Crimes, 127; 3 Chitty's Crim. Law, 959; Pointer v. United States, 151 U. S. 396; United States v. Simmons, 96 U. S. 360. (2) It was a matter largely within the discretion of the trial court as to the reopening of the case after same was closed and the witnesses discharged, and, unless it is conclusively shown that the trial court abused its judicial discretion, this court will not interfere. State v. Worten, 139 Mo. 533; State v. Reed, 137 Mo. 134; State v. Dunn, 179 Mo. 95. (3) Motion for new trial must be filed before judgment. This is mandatory. Sec. 2689, R. S. 1899; State v. Maddox, 153 Mo. 473; State v. Brooks, 92 Mo. 591; State v. Pritchett, 219 Mo. 704; State v. Rosenblatt, 185 Mo. 114; 1 Chitty's Crim. Law (5 Ed.), p. 663; Bishop's Crim. Pro. (1 Ed.), sec. 852. (4) This court cannot consider defendant's objection to the testimony of Stites on the ground that his name was not endorsed

on the indictment, because such objection was not made in the trial court at the time; no objection was made to his testifying, and this objection, coming for the first time in the motion for a new trial, comes too late. State v. Smith, 137 Mo. 28; State v. Tate, 156 Mo. 130; Sec. 2517, R. S. 1899; State v. Pagles, 92 Mo. 300. The section of the statutes which requires, when an indictment shall be found by the grand jury, the names of all the material witnesses shall be endorsed thereon, specially provides that the State may introduce witnesses whose names are not so endorsed on the indictment. Sec. 2517, R. S. 1899; State v. Woodward, 182 Mo. 391; State v. Bailey, 190 Mo. 257; State v. Nettles, 153 Mo. 464; State v. Barrington, 198 Mo. 23. An objection to the testimony of witnesses on the ground that their names were not endorsed on the indictment cannot be raised for the first time on a motion for a new trial. State v. Johnson, 118 Mo. 491; State v. Runzi, 105 Mo. App. 319.

BURGESS, J.—On the 11th day of February, 1909, the grand jury of Howell county returned into open court an indictment charging the defendants with feloniously, wilfully and maliciously shooting and killing three cattle, the property of George Rothwell, W. M. Ulrich and J. H. Soots. At the March term, 1909, of the circuit court of said county, the defendants filed a motion to quash the indictment, which motion was overruled, and they thereupon entered their plea of not guilty, and went to trial. They were found guilty of the offense charged, the jury assessing their punishment at a fine of fifty dollars each. Judgment and sentence were entered accordingly. Defendants thereafter filed motions for new trial and in arrest of judgment, which having been overruled, they appealed.

The defendants, as the evidence shows, were stockholders in a corporation owning a farm of 1600 acres in Howell county, and which was called the "Greg-

more Fruit Farm.'' This farm was managed by one Herman Utterman, who, with his family, lived thereon. The defendants resided in the city of St. Louis, but went to the farm, stopping at the home of Mr. Utterman, on the Wednesday preceding Sunday the 11th of October, 1908, the date of the alleged offense, and stayed there until the following Monday.

Reports of firearms were heard by neighbors, between two and three o'clock on the afternoon of Sunday, October 11, 1908, the sound coming from the direction of the Gregmore Fruit Farm. That evening W. M. Ulrich discovered two of his cows in a maimed condition, and, upon examining them, found that they had been shot. Accompanying his cattle were two belonging to J. H. Soots which also were wounded and maimed in like manner. He picked out some of the shot imbedded in the flesh of the animals, the shot being of different sizes. On the following day two cattle were found dead from gunshot wounds on the Gregmore farm, one of which belonged to Ulrich, and the other to Soots. A few days later Mr. Soots found another one of his cattle lying dead on said farm, it having been killed in the same way. About seven other cattle, belonging to different parties, were found maimed from gunshot wounds on the Gregmore farm. Near where the dead cattle were found were a number of empty No. 12 cartridge shells, which were different from those commonly used by the people of the neighborhood, in that the paper part was red and the shells had more brass than those ordinarily used there. Where the dead cattle were found was about a half mile west of the main buildings on the Gregmore Fruit Farm.

Ed Stites, a witness for the State, testified that he was riding through the Gregmore farm on the afternoon of the Sunday in question, in search of a cow of his which had strayed away some months before, and that, between two and three o'clock of that after-

noon, he saw the defendants shooting cattle on the farm; that he saw Moore shoot first, and that Moore then called to Currier, who was some distance away, to come and help him shoot; that Currier came up and began shooting; that the defendants fired about twenty-five times; that from the reports of the guns he thought one was a rifle and the other a shotgun. Upon cross-examination, the witness stated that he did not immediately tell anybody about what he saw, but that as soon as he learned whose cattle had been shot he told Mr. Ulrich about it; also, that just before the trial Ulrich or George Rothwell told him not to tell defendants' counsel anything he knew about the matter.

The evidence also showed that defendant Currier, on Monday evening, October 12, 1908, at the town of Olden, while eating supper at a hotel there, in discussing the stock law and the trespassing of stock in the yard of the hotel, said to the proprietor of the hotel: "Do them like we do; there was some cattle trespassing upon us, and we just took our guns and shot them." Two witnesses, H. C. Hopkins and John Keithly, testified as to this conversation and the remarks made by the said defendant, their testimony being substantially the same.

Theodore Boss testified for the State that he moved into a house on the Gregmore Fruit Farm on the Sunday in question; that the house he occupied was about two hundred yards from the main buildings on the farm; that about two o'clock that afternoon he went over to the house occupied by Mr. Utterman, and saw the defendants sitting under a shade tree in the yard; that he returned to his house and shot off an old cannon which he had there, and that between two and three o'clock, the same afternoon, he heard a number of shots fired west of where he lived, but that he did not know who fired them.

The defendants offered evidence to show that on

Sunday, October 11, 1908, they were at the farm; that they ate breakfast with Utterman's family at about half-past eight o'clock that morning, and, after breakfast, went out for a ride on the farm, returning about eleven o'clock; that they had dinner about two o'clock, and remained about the house, visiting the barn and kennels, and sitting in the swing in the yard, all that afternoon, and were not at the place where the cattle were shot.

After giving her testimony as to the whereabouts of the defendants that Sunday afternoon, Mrs. Utterman, wife of Herman Utterman, upon cross-examination, was asked if she heard any shooting there that afternoon. Her answer was: "If I did, I didn't pay any attention to it, because Mr. Boss had shot off his cannon once or twice." Again she was asked if she had heard any shooting, and again her answer was, "I heard Mr. Boss's cannon." It is plain that these answers are evasive, and not responsive to the questions asked.

Defendant Moore, on the witness-stand, being questioned by counsel for the State as to the kind of cartridges used on the Gregmore farm, answered: "All kinds; there are shells there, some twenty gauge, and some red and some yellow." However, another witness for the defense, Miss Eva Utterman, daughter of Herman Utterman, on being asked if she ever saw any white shells there, answered that she did not. She was then asked if she saw any red shells. Her answer was, "I think I have."

Defendant Currier, with reference to the remarks attributed to him by the State's witnesses, Hopkins and Keithley, testified that he did not remember anything about it, and that he did not remember seeing either of said witnesses at the town of Olden.

Defendants contend that the indictment charges two separate and distinct offenses, to-wit, the wilful and malicious wounding of four cattle, and the killing

of three cattle, the one being, as contended, a misdemeanor, and the other a felony.

The indictment charges that the defendants "did feloniously, wilfully, maliciously and unlawfully shoot, wound and kill certain cattle, to-wit, four heifers, ranging from one to two years of age; two cows and one two-year-old steer, the property of George O. Rothwell, W. M. Ulrich and J. H. Soots, by then and there shooting said cattle in the head, legs and body, with a shotgun and rifle loaded with gunpowder and leaden shot and balls, which said leaden shot and balls, so discharged from said guns, entered through to the skin and into the flesh of said cattle, thereby causing and . inflicting divers wounds on the head, body and legs of said cattle, of which wounds three of said cattle then and there died, contrary to the form of the statute," etc.

The statute (Sec. 1987, R. S. 1899) upon which the indictment is based reads: "Every person who shall wilfully and maliciously kill, maim or wound any horse, mare, colt, mule, ass or neat or horned cattle of another, shall, upon conviction, be punished by imprisonment in the penitentiary not exceeding three years, or by imprisonment in the county jail not less than six months, or by a fine of not less than fifty dollars, or by both such fine and imprisonment."

As will be noticed, the statute is in the disjunctive, and makes either of the acts mentioned therein criminal, and the indictment unites and charges the offenses conjunctively in one count, which is proper. "Where a statute on which an indictment is founded, enumerates the offenses or the intent necessary to constitute such offenses, disjunctively, the indictment must charge them conjunctively, where the acts are not repugnant." [State v. Flint, 62 Mo. 393.] It has uniformly been held by this court that where a statute makes the commission of certain acts, named therein in the disjunctive, a crime, all of the several

acts may be charged conjunctively in one count, and the count will be sustained by proof of one of the offenses charged. [State v. Harroun, 199 Mo. 519; State v. Pittman, 76 Mo. 56; State v. Bregard, 76 Mo. 322; State v. Flint, supra.] Consequently, the indictment is not open to objection on the ground of misjoinder of offenses, and the court properly overruled the motion to quash on that ground. It is a rule of law that a portion of an indictment may be stricken out, or be treated as surplusage, if enough be left to make a valid and substantial charge of the crime intended to be charged, no essential part of the case being omitted after the striking out occurs. [State v. Meyers, 99 Mo. 107; State v. Flanders, 118 Mo. 227; 1 Chitty's Crim. Law, 250; Whart. Crim. Pl. and Pr., sec. 158.] We hold that the indictment sufficiently charges the defendants with the wilful and malicious killing of certain cattle, and the charge as to the "wounding" may be rejected or treated as surplusage. Besides, the court, by special instruction, confined the jury to a consideration of the evidence with regard only to the killing of the cattle, and told them not to consider any evidence as to the wounding.

Complaint is made that the prosecuting attorney purposely refrained from indorsing the name of Ed. Stites, a material witness for the State, on the indictment, for the purpose of springing him at the trial as a surprise on the defendants. The record does not show that the testimony of this witness was opportunely objected to on this or any other ground, and the objection could not be raised for the first time in the motion for a new trial. [State v. Johnson, 118 Mo. 491, and cases therein cited.]

At the close of the case the defendants asked the court's permission to reopen it for the purpose of introducing J. L. Bess, ex-prosecuting attorney, and Wm. S. Morgan, ex-sheriff of Howell county, as wit-

nesses for the defense.  The court refused so to do,
and such refusal is assigned as error.  According to
the statements of counsel at the time, the gentlemen
named, if permitted, would testify that they frequently
saw George Rothwell and W. M. Ulrich after the
time witness Stites claimed he informed them of the
facts to which he would testify, and that said Roth-
well and Ulrich gave the said ex-prosecuting attorney
and ex-sheriff no information regarding the matter.
In the first place, witness Stites did not in his testi-
mony state the time when he communicated to Ulrich
or Rothwell the facts in his possession.  In the next
place, there was no obligation resting on Ulrich or
Rothwell to tell the ex-prosecuting attorney or ex-
sheriff what they knew in that regard; and, lastly, the
testimony sought to be introduced, being altogether
of a negative character, and not contradictory of any
other evidence introduced at the trial, could in no way
affect the result.  The court properly refused to re-
open the case for the introduction of such negative,
unimportant and incompetent testimony.  As has
often been held by this court, it is a matter within
the discretion of the trial court whether a party shall
be allowed to reopen his case, and introduce further
evidence, after declaring his evidence closed.  [State
v. Pennington, 124 Mo. 388; State v. Eisenhour, 132
Mo. 140; State v. Smith, 80 Mo. 516; State v. Dunn,
179 Mo. 95.]

The record shows that the verdict was returned,
and judgment and sentence entered, on the 24th day
of March, 1909, and the motion for a new trial was
filed the following day.  In criminal cases the motion
for new trial must be filed *"before judgment,* and
within four days after the return of the verdict or
finding of the court."  [Sec. 2689, R. S. 1899; State
v. Maddox, 153 Mo. 471; State v. Rosenblatt, 185 Mo.
114; State v. Pritchett, 219 Mo. 696.]  The motion for
new trial having been filed one day after judgment,

there was, in legal contemplation, no motion for new trial, and therefore nothing for us to review. Nevertheless we have considered the more important points presented in the brief furnished by counsel for defendants. Finding no reversible error in the record, the judgment is affirmed. All concur.