# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-2047

_____

United States of America

*Plaintiff - Appellee*

v.

Charles P. Naylor, II

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: September 19, 2017
Filed: April 5, 2018

_____

Before SMITH, Chief Judge, WOLLMAN, LOKEN, COLLOTON, GRUENDER, BENTON, SHEPHERD, and KELLY, Circuit Judges, En Banc.[1]

_____

KELLY, Circuit Judge.

Charles Naylor, II appeals the 180-month prison sentence the district court imposed after he pleaded guilty to one count of being a felon in possession of a

_____

[1]Judge Erickson, Judge Grasz, and Judge Stras did not participate in the consideration or decision of this matter.

firearm in violation of 18 U.S.C. § 922(g)(1), and the district court enhanced his sentence under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). Because we conclude that Naylor's Missouri second-degree burglary convictions do not qualify as violent felonies under the ACCA, we vacate the sentence, and remand the case to the district court for resentencing.

## I. Background

In November 2015, Naylor pleaded guilty to being a felon in possession of a firearm. The district court found that four of Naylor's prior Missouri second-degree burglary convictions under Mo. Rev. Stat. § 569.170 (1979) qualified as violent felonies, and imposed an ACCA-enhanced sentence of 180 months imprisonment. On appeal, a panel of this court affirmed Naylor's sentence, concluding that it was bound by the decision in United States v. Sykes, 844 F.3d 712 (8th Cir. 2016). Naylor petitioned for rehearing en banc, which we granted. We now hold that convictions under Mo. Rev. Stat. § 569.170 (1979) do not qualify as violent felonies under the ACCA.[2] To the extent Sykes concluded otherwise, it is overruled.

## II. Discussion

The sentence for being a felon in possession of a firearm in violation of § 922(g)(1) is generally no more than ten years in prison. 18 U.S.C. § 924(a)(2). If, however, a defendant has three or more prior convictions for a violent felony or serious drug offense, the ACCA increases the range of possible sentences to a mandatory minimum of fifteen years, and maximum of life, in prison. Id. § 924(e)(1).

---

[2]All of Naylor's convictions were under the Missouri second-degree burglary statute as it existed from January 1, 1979, until December 31, 2016. See Mo. Rev. Stat. § 569.170 (1979). We express no opinion as to whether convictions under earlier or later versions of the statute qualify as violent felonies under the ACCA.

The ACCA defines violent felony to include "burglary." Id. § 924(e)(2)(B)(ii). In the ACCA, Congress intended to adopt "the generic, contemporary meaning of burglary [which] contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." Taylor v. United States, 495 U.S. 575, 598 (1990). Naylor's convictions count as violent felonies under the ACCA "if, but only if, [the Missouri second-degree burglary statute's] elements are the same as, or narrower than, those of the generic offense." See Mathis v. United States, 136 S. Ct. 2243, 2247 (2016). "But if the [statute] covers any more conduct than the generic offense, then it is not an ACCA 'burglary'—even if the defendant's actual conduct (*i.e.*, the facts of the crime) fits within the generic offense's boundaries." See id. at 2248. To determine whether Naylor's burglary convictions qualify as generic burglaries for purposes of the ACCA, we must "focus solely on whether the elements of the crime of conviction sufficiently match the elements of generic burglary, while ignoring the particular facts of" his burglary cases. See id. (citing Taylor, 495 U.S. at 600–01). This analysis "is straightforward when a statute sets out a single (or 'indivisible') set of elements to define a single crime." Id. In that case, we simply compare the statute's elements to those of generic burglary to see if they match. Id. This is called the categorical approach. Id.

Where, as here, a statute lists alternative methods of committing a crime, we must first determine whether the alternatives are elements or means. Id. at 2256. "Elements are the constituent parts of a crime's legal definition—the things the prosecution must prove to sustain a conviction." Id. at 2248 (quotation omitted). "At a trial, they are what the jury must find beyond a reasonable doubt to convict the defendant; and at a plea hearing, they are what the defendant necessarily admits when he pleads guilty." Id. (citation omitted). Means are "[h]ow a given defendant actually perpetrated the crime." Id. at 2251. They "need neither be found by a jury nor admitted by a defendant." Id. at 2248. If the statutory alternatives are elements, the statute is divisible, and we apply the modified categorical approach, wherein we

-3-

may "look[] to a limited set of documents . . . to determine what crime, with what elements, a defendant was convicted of." Id. at 2249. But if they are means, the statute is indivisible, and we apply the categorical approach. See id. at 2249–57.

The issue before us is whether the Missouri second-degree burglary statute is divisible or indivisible, and accordingly, whether we should apply the categorical or modified categorical approach to determine whether Naylor's previous convictions qualify as violent felonies under the ACCA. A person commits Missouri second-degree burglary "when he or she knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein." Mo. Rev. Stat. § 569.170. Here, whether the Missouri second-degree burglary statute is divisible turns on whether the language "building or inhabitable structure" lists separate elements delineating two distinct crimes (burglary of a building and burglary of an inhabitable structure) or various means by which a single crime (burglary of a building or inhabitable structure) can be committed. If they are elements, the statute is divisible and we may apply the modified categorical approach. See Mathis, 136 S. Ct. at 2249, 2256. If the modified categorical approach applies, then Naylor's sentence was properly enhanced under the ACCA, as it is undisputed that four of his Missouri second-degree burglary convictions were based on his knowing, unlawful entry into buildings. But if instead they are means, the statute is indivisible and we must apply the categorical approach. See id. at 2251–57. Under the categorical approach, Naylor is not subject to an enhanced sentence under the ACCA, as the statutory definition of "inhabitable structure" is broader than the locational element of generic burglary. See id. at 2248.

"This court reviews de novo the district court's determination that a defendant's prior conviction constitutes a violent felony under the ACCA." United States v. Walker, 840 F.3d 477, 489 (8th Cir. 2016). To determine whether the Missouri second-degree burglary statute is divisible or indivisible, we look to case law to see if a Missouri court has definitively resolved the issue of whether "building

-4-

or inhabitable structure" denotes elements or means. Mathis, 136 S. Ct. at 2256. If so, we need only follow the Missouri court's holding. Id. "Likewise, the statute on its face may resolve the issue." Id. Missouri model jury instructions may also guide our inquiry. See id. at 2257; see also United States v. McMillan, 863 F.3d 1053, 1057 (8th Cir. 2017). If Missouri law does not provide "clear answers," we may "peek" at the records of Naylor's convictions themselves, but only for the "sole and limited purpose of determining whether the listed items are elements of the offense." Mathis, 136 S. Ct. at 2256–57 (cleaned up). If the record materials do not speak plainly on the means–elements issue, we will be unable to meet the "demand for certainty" required of any determination that a conviction qualifies as a violent felony under the ACCA. Id. at 2257.

### A. The Text of the Statute

Initially, the statute on its face does little to guide our means–elements inquiry. See id. at 2256. The Missouri second-degree burglary statute provides as follows:

> A person commits the crime of burglary in the second degree when he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein. Burglary in the second degree is a class C felony.

Mo. Rev. Stat. § 569.170 (1979). An inhabitable structure is statutorily defined to include:

> a ship, trailer, sleeping car, airplane, or other vehicle or structure:
>
> (a) Where any person lives or carries on business or other calling; or
>
> (b) Where people assemble for purposes of business, government, education, religion, entertainment or public transportation; or

(c) Which is used for overnight accommodation of persons.  Any such vehicle or structure is "inhabitable" regardless of whether a person is actually present . . . .

Id. § 569.010(2) (1979).[3]

The statute provides for the same range of potential punishments regardless of whether a building or inhabitable structure is the object of the burglary.  Mo. Rev. Stat. §§ 557.016, 558.011.1(3), and 569.170.2 (1979); see Mathis, 136 S. Ct. at 2257.  It also does not identify which things must be charged and which things need not be.  See Mathis, 136 S. Ct. at 2256.[4]  Because the text of the statute does not clarify the means–elements issue, we turn to Missouri case law.

### B.  Missouri case law

As a general matter, the Supreme Court of Missouri has consistently held that disjunctive alternatives in Missouri's criminal statutes should be construed as listing various ways of committing a single crime.  See State v. Lusk, 452 S.W.2d 219, 223 (Mo. 1970).  As that court has explained, "if a statute makes criminal the doing of this, or that, or that, mentioning several things disjunctively, there is but one offense, which may be committed in different ways; and in most instances all may be charged in a single count. . . .  And proof of the offense in any one of the ways will sustain the

---

[3]The 2017 amendment to the Missouri statutes retained a substantially similar definition of "inhabitable structure" at Mo. Rev. Stat. § 556.061(30) (2017).

[4]The fact that building and inhabitable structure are separated in the statute by a disjunctive "merely signals that we must determine whether the alternatives are elements or means; it is not determinative one way or another."  McMillan, 863 F.3d at 1058; see also Schad v. Arizona, 501 U.S. 624, 636 (1991) ("[L]egislatures frequently enumerate alternative means of committing a crime without intending to define separate elements or separate crimes.").

allegation." State v. Hartman, 273 S.W.2d 198, 203 (Mo. banc 1954). In other words, where a Missouri statute enumerates a list of prohibited activities disjunctively, the statute creates only one crime, albeit a crime that can be committed in a variety of ways.

When charging under such statutes, Missouri prosecutors are not limited to alleging that the defendant violated the statute by only one of the disjunctively listed methods. Indeed, prosecutors may charge that a defendant violated such a statute by one, some, or all of the possible ways, so long as the means that are selected are set out in the conjunctive in the charging document. State v. Currier, 125 S.W. 461, 463 (Mo. 1910) ("It has uniformly been held by [the Supreme Court of Missouri] that where a statute makes the commission of certain acts, named therein in the disjunctive, a crime, all of the several acts may be charged conjunctively in one count, and the count will be sustained by proof of one of the offenses charged."). The jury may then convict the defendant of violating the statute by any of those methods, and need not be unanimous as to which of those methods the defendant used to perpetrate the crime. State v. Fitzpatrick, 193 S.W.3d 280, 292 (Mo. Ct. App. 2006) ("[T]he jury need only be unanimous as to the ultimate issue of guilt or innocence, and need not be unanimous as to the means by which the crime was committed.").[5] Missouri's

---

[5]Judge Shepherd's dissent correctly observes that a statutory alternative may be included among those submitted disjunctively to the jury only if it is supported by substantial evidence. See Lusk, 452 S.W.2d at 223. But disjunctive jury instructions do not require juries to find each alternative unanimously and beyond a reasonable doubt, which is a defining characteristic of elements. See State v. Stover, 388 S.W.3d 138, 153–54 (Mo. banc 2012); State v. Richter, 504 S.W.3d 205, 211–12 (Mo. Ct. App. 2016); State v. White, 92 S.W.3d 183, 192–93 (Mo. Ct. App. 2002); see also Mathis, 136 S. Ct. at 2248, 2257; id. at 2268 (Alito, J., dissenting). Simply put, substantial evidence is not the same as proof beyond a reasonable doubt. State v. Bruner, __S.W.3d__, 2018 WL 414948, at *5 (Mo. banc 2018) ("Sufficient 'substantial' evidence is provided if there is 'evidence putting a matter in issue.'" (quoting State v. Avery, 120 S.W.3d 196, 200 (Mo. banc 2003))).

well-established rule that disjunctive phrases in criminal statutes should be treated as methods of committing a single crime suggests that "building or inhabitable structure" denotes two means of committing a single crime under the Missouri second-degree burglary statute.[6]

While Missouri courts have not yet decided the precise issue before us, they have resolved cases involving the second-degree burglary statute in a manner consistent with this general rule.[7]  In State v. Pulis, the defendant was convicted of attempted second-degree burglary based on his attempt to unlawfully enter a greenhouse.  822 S.W.2d 541, 542–43 (Mo. Ct. App. 1992).  On appeal, he argued that the state had failed to prove that the greenhouse was a "building."  Id. at 543.  The Missouri Court of Appeals affirmed, reasoning that it did not need to reach the issue of whether the greenhouse was a "building" because it was clearly an "inhabitable structure."  Id. at 544–45.  Importantly, the court explained:  "Inasmuch as burglary in the second degree . . . can be committed by unlawfully entering *either* a building or an inhabitable structure, we need not determine whether the greenhouse

---

[6]We note that, in Mathis, the United States Supreme Court relied on these same principles, as enunciated by the Supreme Court of Iowa, in concluding that a disjunctive list of locations that could be the subject of an Iowa burglary were means rather than elements.  136 S. Ct. at 2250 (citing State v. Duncan, 312 N.W.2d 519, 523 (Iowa 1981)).

[7]To the extent Missouri courts have addressed disjunctive phrases in Missouri burglary statutes, they have interpreted them as means.  Before 1979, the Missouri second-degree burglary statutes included an additional disjunctive phrase—that the defendant entered a prohibited location "with the intent to steal or commit any crime therein."  Mo. Rev. Stat. §§ 560.045–.080 (1969); see also id. § 560.040 (first-degree burglary required that defendant intended "to commit some felony or steal therein").  The Supreme Court of Missouri described this disjunctive phrase as the statutes' "essential element of intent," which could be "committed in two ways; that is, by an intent to steal or by an intent to commit any other crime in the building broken and entered."  State v. Shepard, 442 S.W.2d 58, 60 (Mo. banc 1969).

was a 'building' if it meets the statutory definition of 'inhabitable structure.'" Id. at 544 (emphasis in original). This conclusion necessarily rests on the premise that "building or inhabitable structure" are means, not elements. That is, the court could not have affirmed the defendant's conviction on the alternative basis that the greenhouse was an inhabitable structure had it believed "building or inhabitable structure" listed elements of two different crimes. See State v. Smith, 592 S.W.2d 165, 165 (Mo. banc 1979); State v. Brown, 950 S.W.2d 930, 931 (Mo. Ct. App. 1997) ("Due process requires that a defendant cannot be charged with one offense and be convicted of another.").

In State v. Washington, the defendant was convicted by a jury of first-degree burglary based on his unlawful entry into a garage. 92 S.W.3d 205, 206–07 (Mo. Ct. App. 2002). At the time, two people were present in a house that shared a roof and common walls with the garage; a covered porch led from the house to the garage, but the house's living quarters were not accessible from inside the garage. Id. at 209–10. In Missouri, a person commits first-degree burglary when he "knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein" and does so, inter alia, "while '[t]here is present in the structure another person who is not a participant in the crime.'" Id. at 208 (quoting Mo. Rev. Stat. § 569.160.1(3) (1979)). On appeal, the defendant argued that there was insufficient evidence to support his conviction because the garage itself was not an "inhabitable structure," and that it could not be treated as part of the house because the garage and the house's living quarters were not connected by an interior door. Id. at 208–09.

The Missouri Court of Appeals vacated the defendant's conviction for first-degree burglary, agreeing that the garage itself was not an inhabitable structure, nor was it sufficiently connected to the house such that it could be considered a part thereof. Id. at 209–10. In Missouri, if an appellate court reverses a conviction for insufficiency of the evidence, it may nevertheless enter conviction on a lesser

included offense "if the evidence was sufficient for the jury to find each of those elements and the jury was required to find those elements to enter the ill-fated conviction on the greater offense." Id. at 210 (citing State v. O'Brien, 857 S.W.2d 212, 220 (Mo. banc 1993)). Noting that second-degree burglary is a lesser included offense of first-degree burglary, as it "simply dispenses with the additional first-degree burglary element requiring an innocent's presence," the Washington court then entered conviction under the second-degree burglary statute. Id. at 210–11; see also State v. Jackson, 433 S.W.3d 390, 404 (Mo. banc 2014) (discussing "nested" lesser included offenses). The Missouri Court of Appeals could only do so if "building or inhabitable structure" were means.

To be sure, if "building or inhabitable structure" denotes elements of separate crimes, then the defendant in Washington would have been appealing a conviction for first-degree burglary of an inhabitable structure. Because a lesser included offense must share all its necessary elements with its greater offense, the lesser included offense of first-degree burglary of an inhabitable structure would be second-degree burglary of an inhabitable structure.[8] But, the Missouri Court of Appeals could not enter conviction for second-degree burglary of an inhabitable structure for one of the same reasons it vacated the defendant's first-degree burglary conviction: the garage was not an inhabitable structure. Thus, the court could enter a conviction for second-degree burglary in Washington only because the phrase "building or inhabitable structure" describes means.

Shortly after we granted Naylor's petition for rehearing en banc in this appeal, the Supreme Court of Missouri provided additional, persuasive guidance as to its

_____

[8] And second-degree burglary of a building would not be a lesser included offense of first-degree burglary of an inhabitable structure because it would be possible to burgle an inhabitable structure that is not a building. See Jackson, 433 S.W.3d at 404; see also State v. Neighbors, 613 S.W.2d 143, 146–47 (Mo. Ct. App. 1980); State v. Fleming, 528 S.W.2d 513, 516 (Mo. Ct. App. 1975).

understanding of the elements of Missouri second-degree burglary. In <u>State v. Smith</u>, the court was tasked with deciding whether the defendant—who was convicted of first-degree burglary—had been entitled to a jury instruction on first-degree trespass, a lesser included offense of both first-degree and second-degree burglary. 522 S.W.3d 221, 224–28 (Mo. banc 2017). In doing so, it described the difference between first-degree burglary and second-degree burglary, as follows:

> [F]irst-degree burglary . . . has three elements: (1) *a knowing unlawful entry into a building or inhabitable structure*; (2) with an intent to commit a crime therein; (3) while armed with a deadly weapon. Second-degree burglary contains only *the first two elements* of the greater offense.

<u>Id.</u> at 227 (emphasis added). While <u>Smith</u> did not present the specific issue of whether "building or inhabitable structure" identifies elements or means, the Supreme Court of Missouri's inclusion of "building or inhabitable structure" within a single element of Missouri second-degree burglary is nevertheless entitled to great—if not dispositive—weight in our analysis.

The government argues that the decision in <u>State v. Yacub</u> establishes that "building or inhabitable structure" are elements. 976 S.W.2d 452 (Mo. banc 1998) (per curiam). In <u>Yacub</u>, the court stated, in dicta, that "[b]y charging defendant with entering an inhabitable structure [in a second-degree burglary case], the state assumed the burden of proving the house was an inhabitable structure." <u>Id.</u> at 453. Yet this dicta does little to elucidate the issue of whether "building or inhabitable structure" identifies means or elements: By charging that the residence was an inhabitable structure in the indictment, the state assumed the burden of proving that the residence was an inhabitable structure regardless of whether they are means or elements. See <u>State v. White</u>, 431 S.W.2d 182, 186 (Mo. 1968) ("One cannot be charged with one offense or with one form of an offense, and convicted of another."); <u>State v. Lee</u>, 841 S.W.2d 648, 650 (Mo. banc 1992) (discussing variances).

-11-

For these reasons, Missouri case law involving the Missouri second-degree burglary statute, along with the Supreme Court of Missouri's well-established guidance for interpreting disjunctive phrases in criminal statutes, strongly supports a conclusion that the phrase "building or inhabitable structure" describes means of committing a single crime.

### C. Missouri Approved Charges and Jury Instructions

Finally, the government asks us to turn to the Missouri model charges and jury instructions as another source of authoritative Missouri law.[9] In Missouri, criminal charging documents must "[s]tate plainly, concisely, and definitely the essential facts constituting the elements of the offense charged." Mo. Sup. Ct. R. 23.01(b). When drafting informations and indictments, Missouri prosecutors may use the Missouri Approved Charges (MACH), which are pattern charges approved by the Supreme Court of Missouri.[10] When it comes to drafting jury instructions in criminal trials, Missouri courts are required to use the Missouri Approved Instructions-Criminal (MAI), model jury instructions that are also approved by the Supreme Court of Missouri. See Mo. Sup. Ct. R. 28.01; State v. Nolan, 872 S.W.2d 99, 103 (Mo. banc

---

[9]This court has previously used model jury instructions to "reinforce" our interpretation of the means–elements inquiry. McMillan, 863 F.3d at 1057; United States v. Lamb, 847 F.3d 928, 932 (8th Cir. 2017). So have our sister circuits. See, e.g., United States v. Faust, 853 F.3d 39, 54 & n.12 (1st Cir. 2017); United States v. Titties, 852 F.3d 1257, 1270–71, 1270 n.15 (10th Cir. 2017).

[10]It is not clear whether prosecutors are required to use the MACH. Compare State v. O'Connell, 726 S.W.2d 742, 747 n.6 (Mo. banc 1987) (explaining that use of the MACH is "not mandatory, but only recommended. Failure to follow a MACH-CR form does not alone render an information or indictment defective."), with State v. Briscoe, 847 S.W.2d 792, 795 (Mo. banc 1993) (noting that the state has an obligation "to follow verbatim the language specified in" the MACH). Nevertheless, charging documents that "are substantially consistent with" the MACH are deemed to meet the requirements of Mo. Sup. Ct. R. 23.01(b).

1994). "MAI instructions are presumptively valid and, when applicable, must be given to the exclusion of other instructions."[11] State v. Zink, 181 S.W.3d 66, 74 (Mo. banc 2005); see Mo. Sup. Ct. R. 28.02(c). Failure to give an appropriate MAI is "error, the error's prejudicial effect to be judicially determined, provided that objection has been timely made." Mo. Sup. Ct. R. 28.02(f).

The second-degree burglary MACH provides:

> The (Grand Jurors) (Circuit Attorney) (Prosecuting Attorney) of the (City) (County) of _____, State of Missouri, charge(s) that the defendant, in violation of Section 569.170, RSMo, committed the class C felony of burglary in the second degree, punishable upon conviction under Sections 558.011 and 560.011, RSMo, in that (on) (on or about) [*date*], in the (City) (County) of _____, State of Missouri, the defendant knowingly (entered) (remained) unlawfully in (a building) (an inhabitable structure), located at [*Briefly describe location.*] and (owned) (possessed) by [*name of owner or possessor*], for the purpose of committing [*name of crime*] therein.

MACH 23.54 (1st ed. Supp. Oct. 1, 1998).

Tracking the relevant language of the MACH, the second-degree burglary MAI directs juries to return guilty verdicts if they find beyond a reasonable doubt:

> First, that (on) (on or about) [*date*], in the (City) (County) of _____, State of Missouri, the defendant knowingly (entered) (remained) unlawfully (in) (a building) (an inhabitable structure) located at [*Briefly describe the location.*] and (owned) (possessed) by [*name of owner or possessor*], and

---

[11]However, "[i]f an instruction following [the MAI] conflicts with the substantive law, any court should decline to follow [the MAI] or its Notes on Use." State v. Carson, 941 S.W.2d 518, 520 (Mo. banc 1997).

Second, that defendant did so for the purpose of committing the crime of [*name of crime*] therein . . . .

MAI 323.54 (3d ed. Oct. 1, 1998).

The MACH's "Supplemental Notes on Use" include the following explanation regarding the "Use of Parentheses or Brackets":

> Parentheses or brackets in the [MACH] enclose matter that should either be included or omitted, depending upon the facts of the particular case. In most cases, it is readily apparent whether the matter in parentheses or brackets should be included or omitted. . . . Generally, material within parentheses provide choices for the drafter . . . .

MACH 1.00(C) (1st ed. Supp. Sept. 1, 2003). The MAI includes a nearly identical explanation: "In the instructions, parentheses enclose words or phrases that will be either omitted or included, depending upon the facts of the case being submitted." MAI, How to Use This Book, at vi (3d ed. Jan. 1, 1987).

The government argues that "building" and "inhabitable structure" must be elements because they are set off in a series of adjacent sets of parentheses in the second-degree burglary MAI. In the government's view, this means that a drafter may select "building" *or* "inhabitable structure," but not both; and that therefore, the alternatives must be elements. But the facts of a particular case will always, in some way, dictate whether a statutory alternative is omitted or included in a jury instruction, regardless of whether that alternative is a means or an element. We are not persuaded by the government's argument.[12]

---

[12]The MAI and MACH could also suggest that parenthetical alternatives are means: MACH 1.00(N) authorizes drafters to charge parenthetical alternatives conjunctively, and to submit them to juries disjunctively. See Mathis, 136 S. Ct. at 2248, 2256–57; Descamps, 570 U.S. at 27; United States v. McArthur, 850 F.3d 925,

-14-

## III. Conclusion

Based on our review of the Missouri case law and the text of the Missouri second-degree burglary statute, we conclude that Missouri law establishes that the phrase "building or inhabitable structure" specifies means, not elements. Because Missouri law provides a clear answer, we need not resort to taking a "peek at the record documents" of Naylor's convictions.[13]  See Mathis, 136 S. Ct. at 2256–57 (brackets omitted).  We hold that the Missouri second-degree burglary statute is indivisible as to the phrase "building or inhabitable structure."  Because the Missouri second-degree burglary statute covers more conduct than does generic burglary, we further hold that convictions for second-degree burglary under Mo. Rev. Stat. § 569.170 (1979) do not qualify as violent felonies under the ACCA.  Accordingly,

937–38 (8th Cir. 2017); State v. Bradley, 811 S.W.2d 379, 381–82 (Mo. banc 1991) (per curiam).  And, Missouri appellate courts have approved indictments and jury instructions that include words and phrases chosen from more than one set of successive, adjoining sets of parentheses in the MAI and MACH.  See, e.g., State v. Harris, 873 S.W.2d 887, 887–88 (Mo. Ct. App. 1994); State v. Dahmer, 743 S.W.2d 462, 464 (Mo. Ct. App. 1987); State v. Brigham, 709 S.W.2d 917, 921–22 (Mo. Ct. App. 1986).  Because Missouri case law provides ample support for our conclusion that "building or inhabitable structure" are means, we need not weigh in on the persuasive value of the MAI and MACH or their Notes on Use in determining whether this or any other Missouri statute charges means or elements.

[13] In its "peek" at Naylor's record documents, Judge Shepherd's dissent reasons that "building or inhabitable structure" lists elements because Naylor pleaded guilty to indictments charging that he burgled either a "building" or "inhabitable structure," but not both.  But means do not become elements simply because a prosecutor selects only one.  See Mathis, 136 S. Ct. at 2257; id. at 2262, 2264 (Breyer, J., dissenting). It is not hard to imagine a situation where a prosecutor elects to charge only one means under the facts of a given case, i.e., where substantial evidence supports only one means.

-15-

we vacate Naylor's sentence, and remand this case to the district court for resentencing.

COLLOTON, Circuit Judge, with whom WOLLMAN and GRUENDER, Circuit Judges, join, concurring in the judgment.

*Mathis v. United States*, 136 S. Ct. 2243 (2016), was an easy case for distinguishing between "means" and "elements" in a state criminal statute, because the Supreme Court of Iowa had addressed the question directly. But the courts of appeals must decide a broader swath of cases, and experience suggests that the Supreme Court may have been unduly optimistic when it predicted that "indeterminacy should prove more the exception than the rule." *Id*. at 2257.

Yet we grapple with the problem as best we can, and the better reading of Missouri court decisions to date is that unlawful entry into a "building" and unlawful entry into an "inhabitable structure" describe alternative means of committing second-degree burglary in Missouri under Mo. Rev. Stat. § 569.170 (1979). The Supreme Court of Missouri, in *State v. Smith*, 522 S.W.3d 221 (Mo. 2017), characterized these alternatives as part of a single element. *Id*. at 227. And the logic of *State v. Pulis*, 822 S.W.2d 541 (Mo. Ct. App. 1992), and *State v. Washington*, 92 S.W.3d 205 (Mo. Ct. App. 2002), supports that characterization. *See ante*, at 8-11 (opinion of Kelly, J.); *United States v. Bess*, No. 4:15CR00021 ERW, 2016 WL 6476539, at *4-5 (E.D. Mo. Nov. 2, 2016). These decisions are the best evidence available. The statutory text is unenlightening; by listing the terms in the alternative, the text merely raises the question whether the alternatives are means or elements.

The Supreme Court of Missouri has identified *State v. Lusk*, 452 S.W.2d 219, 223 (Mo. 1970), and *State v. Shepard*, 442 S.W.2d 58, 60 (Mo. 1969), as decisions enforcing a rule against a variance between a charge and a jury instruction that deprives a criminal defendant of adequate notice. *State v. Lee*, 841 S.W.2d 648, 650

-16-

(Mo. 1992). These decisions hold that if an information or indictment charges one method (or means) of committing an offense, then the State must prove that method and not a different one. They do not define the elements of burglary. In light of *Lee*, *dicta* in *State v. Yacub*, 976 S.W.2d 452 (Mo. 1998)—"By charging defendant with entering an inhabitable structure, the state assumed the burden of proving the house was an inhabitable structure," *id*. at 453—is best viewed as describing that same rule against variances. But where a prosecutor charges both alternatives of "building" and "inhabitable structure" in a single count, *e.g.*, *State v. Harris*, 873 S.W.2d 887, 887-88 (Mo. Ct. App. 1994), the State is not bound to prove a particular means.

The government argues that the Missouri approved jury instructions for criminal cases show that "building" and "inhabitable structure" are alternative elements because they are listed in adjacent parentheticals in the approved instruction for second-degree burglary. *See* MAI-CR 323.54 (3d ed. Oct. 1, 1998).[14] Accepting that position, or an opposite position that terms listed in this way must be means, *see ante*, at 14 n.12 (opinion of Kelly, J.), would have far-reaching implications. Either conclusion would make careful inquiry into statutory text and Missouri court decisions irrelevant if an approved instruction merely listed statutory alternatives in parentheses.

---

[14]The Missouri Approved Instruction provides as follows:

First, that (on) (on or about) [*date*], in the (City) (County) of _____, State of Missouri, the defendant knowingly (entered) (remained) unlawfully (in) (a building) (an inhabitable structure) located at [*Briefly describe the location*.] and (owned) (possessed) by [*name of owner or possessor*], and

Second, that defendant did so for the purpose of committing the crime of [*name of crime*] therein . . . .

The Missouri Approved Instructions make no such grandiose claim of significance. They state only that "[i]n the instructions, parentheses enclose words or phrases that will be either omitted or included, depending on the facts of the case being submitted." MAI, How to Use This Book, at vi (3d ed. Jan. 1, 1987). This guidance does not dictate whether alternatives listed in parentheses must be elements or means. If statutory alternatives are elements, then the facts of the case will reflect which element was charged, and only the charged element should be included in the instruction. If statutory alternatives are means, then the facts of the case will reflect whether the defendant was notified that one or both means were charged, and whether sufficient evidence supports a finding of guilt on one or both means, so that the court may decide whether to include one or both means in the instruction. The Missouri approved instructions thus do not advance the inquiry.[15]

The decisions of the Missouri courts concerning the second-degree burglary statute at issue here establish that unlawful entry into a "building" and unlawful entry into an "inhabitable structure" are best viewed as alternative means of committing a single offense of burglary. If the Supreme Court of Missouri declares otherwise in the future, then the question can be revisited. As the law stands, "[b]ecause the

---

[15]The lead opinion says that the Missouri Approved Charges for prosecutors "could also suggest" that parenthetical alternatives are necessarily means. *Ante*, at 14 n.12. But these charges are not binding on prosecutors, and they include a similar modest instruction that parenthetical terms should be omitted or included "depending upon the facts of the particular case." Although the "Supplemental Notes on Use" recommend that prosecutors charge parenthetical alternatives in the conjunctive, the Supreme Court of Missouri has held that it is permissible to charge separate offenses conjunctively in a single count under certain factual circumstances. *See State v. Bradley*, 811 S.W.2d 379, 381-82 (Mo. 1991). So alternative elements may sometimes be charged conjunctively in a count, depending upon the facts of the particular case. The approved charges do not purport to state a universal rule that parenthetical alternatives are always "means."

Missouri second-degree burglary statute covers more conduct than does generic burglary, . . . convictions for second-degree burglary under Mo. Rev. Stat § 569.170 (1979), do not qualify as violent felonies under the ACCA." *Ante*, at 15 (opinion of Kelly, J.). I therefore concur in the judgment vacating Naylor's sentence and remanding the case for resentencing.

LOKEN, Circuit Judge, with whom SHEPHERD, Circuit Judge, joins, dissenting.

I join in Judge Shepherd's dissent because it applies <u>Mathis v. United States</u>, 136 S. Ct. 2243 (2016), in a plausible and in my view the only permissible manner.

Though <u>Mathis</u> is a difficult decision to interpret and apply, this should be an easy case to decide. We deal with second degree burglary convictions under Mo. Rev. Stat. § 569.170. In <u>Taylor v. United States</u>, 495 U.S. 575 (1990), the Supreme Court considered whether second degree burglary convictions under seven statutes that were later replaced by § 569.170 were "generic" burglary convictions under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(ii). <u>Id.</u> at 578 & n.1. The unanimous Court concluded that "most but not all the former Missouri statutes defining second-degree burglary include all the elements of generic burglary." <u>Id.</u> at 602. In remanding, the Court instructed:

> [I]n a State whose burglary statutes include entry of an automobile as well as a building, if the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and that the jury necessarily had to find an entry of a building to convict, then the Government should be allowed to use the conviction for enhancement. <u>Id.</u>

The Court reached these conclusions after an exhaustive review of the complex drafting history of this federal statute (a review Justice Scalia thought unnecessary).

The Court noted that the ACCA's predecessor mandated a minimum 15-year sentence if the defendant had three prior convictions "for robbery or burglary." Id. at 581. Congress set out to broaden the statute to cover all violent felonies but then specifically included burglary and other "serious property offenses." Id. at 589. After reviewing this legislative process, the Court -

> assume[d] that Congress had a purpose in adding the word "burglary" to [§ 924(e)(2)(B)(ii)]. The most likely explanation, in view of the legislative history, is that Congress thought that certain general categories of property crimes -- namely burglary, arson, extortion, and the use of explosives -- so often presented a risk of injury to persons, or were so often committed by career criminals, that they should be included in the enhancement statute even though, considered solely in terms of their statutory elements, they do not necessarily involve the use or threat of force against a person.

Id. at 597. Focusing solely on its interpretation of Mathis, the majority now holds "that convictions for second-degree burglary under Mo. Rev. Stat. § 569.170 (1979) do not qualify as violent felonies under the ACCA." Ante at 15. In other words, all Missouri burglaries, whether in fact generic burglaries or not, are excluded from what Congress demonstrably intended to include. Judge Shepherd persuasively demonstrates that Mathis need not be construed in this manner. I add that, in my view, the majority (i) improperly construes Mathis as a Supreme Court decision that implicitly overruled the Court's prior decision in Taylor, and (ii) reaches a result so contrary to the obvious intent of Congress as to constitute judicial legislation that is beyond our Article III powers.

SHEPHERD, Circuit Judge, with whom LOKEN, Circuit Judge, joins, dissenting.

As is abundantly demonstrated by the splintered opinions filed today, the only clear truth presently before the court is that Missouri law is patently unclear on

whether the statutory terms are means or elements. This case is therefore far removed from the "straightforward" application of Iowa law presented to the Supreme Court in Mathis v. United States, 136 S. Ct. 2243, 2257 (2016). Instead, we have no case directly on point, and we are left to combing Missouri precedent in an attempt to guess how courts in that state treat disjunctively phrased statutes. Although the lead opinion states that this exercise leads to a "strongly support[ed] . . . conclusion that the phrase 'building or inhabitable structure' describes means of committing a single crime," supra p. 12 (opinion of Kelly, J.), I am of the opinion that Missouri law reaches the opposite outcome. At the very least, however, I believe that the law is unclear enough that we are entitled to "peek" at the records of Naylor's previous convictions. Mathis, 136 S. Ct. at 2256. And this glance reveals that Naylor's prior convictions for burglary of a "building" qualify as "violent felon[ies]" under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1), after applying the modified categorical approach. I will address each point in turn.

I.

As the lead opinion notes, "authoritative sources of state law" are our first stop in answering the means–elements question presented in this case. See Mathis, 136 S. Ct. at 2256. I agree with the lead opinion's conclusion that "the statute on its face does little to guide our means–elements inquiry." Supra p. 5 (opinion of Kelly, J.). I likewise agree that our next task is to consult Missouri case law.

"As a general matter," the lead opinion begins, "the Supreme Court of Missouri has consistently held that disjunctive alternatives in Missouri's criminal statutes should be construed as listing various ways of committing a single crime." Supra p. 6 (opinion of Kelly, J.) (citing State v. Lusk, 452 S.W.2d 219, 223 (Mo. 1970)). But Lusk also clearly states that "'[i]t has long been the rule that when a crime may be committed by any of several methods, the information [or indictment] must charge

-21-

one or more of the methods, and the method or methods submitted in the verdict directing instruction must be among those alleged in the information, and when submitted in the disjunctive each must be supported by evidence.'" 452 S.W.2d at 223 (alteration in original) (quoting State v. Shepard, 442 S.W.2d 58, 60 (Mo. 1969)). Moreover, an instruction is only warranted where the government presents "substantial evidence" of the matter at trial. See State v. Westfall, 75 S.W.3d 278, 280 (Mo. 2002); State v. Pittman, 167 S.W.3d 232, 234 (Mo. Ct. App. 2005) ("Substantial evidence is evidence from which the trier of fact could reasonably find the issue in harmony with the verdict.").[16] If something has to be charged in an indictment, proven at trial, and submitted to the jury, that thing plainly is an element of the underlying offense. See Mathis, 136 S. Ct. at 2248 ("Elements are . . . the things the prosecution must prove to sustain a conviction." (internal quotation marks omitted)).[17] The lead opinion then correctly concludes that Missouri prosecutors have a choice in drafting an indictment based on the evidence available at the time: they can specifically choose one alternative or the other, or they can include both. Regardless of the chosen method, however, every charged alternative which is

---

[16]To be sure, as the lead opinion notes, "substantial evidence is not the same as proof beyond a reasonable doubt." Supra p. 7, n.5. But Mathis required only evidence sufficient "to sustain a conviction" rather than the proof required to convict in the first instance. 136 S. Ct. at 2248.

[17]Regardless of Lusk's status as a variance case, I am not convinced that this language from Mathis is inapplicable. See Descamps v. United States, 570 U.S. 254, 272 (2013) ("[W]hy limit the modified categorical approach only to explicitly divisible statutes? The simple answer is: Because only divisible statutes enable a sentencing court to conclude that a jury (or judge at a plea hearing) has convicted the defendant of every element of the generic crime. A prosecutor charging a violation of a divisible statute must generally select the relevant element from its list of alternatives. And the jury, as instructions in the case will make clear, must then find that element, unanimously and beyond a reasonable doubt." (internal citation and footnote omitted)).

-22-

submitted to the jury must be supported by evidence. See Lusk, 452 S.W.2d at 223. Thus, at least as far as Lusk is concerned, Missouri courts treat disjunctively phrased items as elements. See Mathis, 136 S. Ct. at 2248.

For this reason, the Supreme Court of Missouri has noted in what appears to be the only case construing the language here at issue that "[b]y charging defendant with entering an inhabitable structure, the state assumed the burden of proving the house was an inhabitable structure." State v. Yacub, 976 S.W.2d 452, 453 (Mo. 1998) (per curiam). The lead opinion is quick to assert that Yacub's language may be dicta, and I do not entirely disagree. But Yacub merely represents the most on-point application of the long-standing procedure in Missouri that the prosecution must specify in an indictment which statutory alternative formed the basis of a defendant's alleged crime and prove this chosen method at trial. See, e.g., Lusk, 452 S.W.2d at 223. More importantly, Yacub highlights a significant facet of the Missouri burglary statutes: In practice, prosecutors overwhelmingly charge individuals with burgling a "building" or an "inhabitable structure," rather than listing both in the same count. E.g., State v. Rist, 456 S.W.2d 13, 14 (Mo. 1970) (building); Taylor v. State, 497 S.W.3d 342, 351 (Mo. Ct. App. 2016) (inhabitable structure). And this is no doubt the result of the increased burden on a prosecutor to potentially prove both alternatives if both were charged.

Thus, while the lead opinion presents an argument that Missouri courts sometimes treat disjunctively phrased statutory items as means of committing a single offense, it does so on the basis of statutes far removed from second-degree burglary. See, e.g., State v. Hartman, 273 S.W.2d 198, 202 (Mo. 1954) (feloniously passing a bogus check with the intent to defraud); State v. Currier, 125 S.W. 461, 462 (Mo. 1910) (maliciously killing the cattle of another). In so doing, I contend that the lead opinion loses sight of the specific inquiry currently before our court: How do the

Missouri courts treat the phrase "building or inhabitable structure" in Mo. Rev. Stat. § 569.170?

On that point, we admittedly have limited guidance, but that guidance indicates, as expressed above, that the two alternatives are elements because, if they were pursued disjunctively, prosecutors would be forced to prove each at trial. And the lead opinion's quotation from State v. Smith, 522 S.W.3d 221, 227 (Mo. 2017), does not change the outcome because we have never considered as dispositive the label a state appends to a statutory alternative. Hypothetically applying this law to Naylor's prior convictions, if the indictments had charged Naylor with burglary of a "building or inhabitable structure" and those counts had proceeded to a trial at which the government presented evidence only that Naylor burgled an "inhabitable structure," any resulting conviction would likely be overturned. See Lusk, 452 S.W.2d at 223 ("[W]hen submitted in the disjunctive each [alternative] must be supported by evidence." (internal quotation marks omitted)). The area burgled—whether a "building" or an "inhabitable structure"—is therefore an element of the offense. See Mathis, 136 S. Ct. at 2248 ("Elements are . . . the things the prosecution must prove to sustain a conviction." (internal quotation marks omitted)).

Accordingly, I would reinstate the panel opinion in this case because it properly applied the modified categorical approach to determine that Naylor's previous convictions under Mo. Rev. Stat. § 569.170 were violent felonies as defined in the ACCA. See supra p. 4 ("If the modified categorical approach applies, then Naylor's sentence was properly enhanced under the ACCA, as it is undisputed that four of his Missouri second-degree burglary convictions were based on his knowing, unlawful entry into buildings.").[18]

---

[18]Likewise, perfunctory as its analysis may have been, I would leave undisturbed the panel decision in United States v. Sykes, 844 F.3d 712 (8th Cir. 2016). I do not, however, quarrel with the implication that Sykes erred in

-24-

## II.

At minimum, the above analysis casts doubt on the lead opinion's conclusion. We are faced with conflicting precedent on how the courts of that state would solve this dilemma, and, in such a circumstance, the Supreme Court has authorized us to "peek" at "the record of the prior conviction itself," including documents such as indictments and jury instructions,[19] "for the sole and limited purpose of determining whether [the listed items are] element[s] of the offense." Mathis, 136 S. Ct. at 2256-57 (alterations in original) (internal quotation marks omitted). As demonstrated below, that "peek" reveals that the words "building" and "inhabitable structure" are elements rather than means.

Where "one count of an indictment and correlative jury instructions charge a defendant with burgling a 'building, structure, or vehicle' . . . [,] [t]hat is as clear an indication as any that each alternative is only a possible means of commission, not an element that the prosecutor must prove to a jury beyond a reasonable doubt." Id. at 2257. On the other hand, "an indictment and jury instructions could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements." Id. This latter hypothetical—referencing one term to the exclusion of another—is precisely what happened here. Naylor has, at one time or

_____

determining the divisibility of the statute based solely on its disjunctive phrasing.

[19]To the extent that the lead opinion relies on Missouri jury instructions and charges, I would argue that it is conceding the lack of clarity in Missouri law. Mathis's discussion of the permissible use of jury instructions appears only in the part of the opinion devoted to where to turn "if state law fails to provide clear answers." Id. at 2256. I further assert that Mathis never explicitly authorized us to consult model jury instructions or charges, but only allows us to look at those contained in "the record of a prior conviction itself." Id.

another, pled guilty to six different counts of burglary. Not a single one of the indictments in these prosecutions claims Naylor burgled a "building or inhabitable structure." Instead, each indictment specifically clarifies that "the defendant knowingly entered unlawfully in a building" or "the defendant knowingly entered unlawfully in an inhabitable structure." As a result, Mathis instructs us to treat these alternatives as elements, and this conclusion seems all the more inescapable given that this is the single clearest piece of evidence as to how Missouri courts would handle this situation.

Critically, however, the fact that Naylor pled guilty to all of these counts makes this even more straightforward. "Elements are the constituent parts of a crime's legal definition." Mathis, 136 S. Ct. at 2248 (internal quotation marks omitted). "[A]t a plea hearing, they are what the defendant necessarily admits when he pleads guilty." Id. Mathis allows us a "peek" at the indictments, which definitively state "one alternative term to the exclusion of all others." Id. at 2257. Accordingly, "the statute contains a list of elements." Id. And the "element" Naylor pled guilty to on four separate occasions was burglary of a "building," which comports with the generic version of burglary under federal law. See Shepard v. United States, 544 U.S. 13, 17 (2005) ("[G]eneric burglary[] [is] an unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." (internal quotation marks omitted)).

III.

For the above reasons, I respectfully dissent. I would reinstate the panel decision and leave undisturbed our holding in Sykes.

_____

-26-